Estate of Fredericksen: Dunbar, Executor, Appellant,
vs. Brunstad and wife, Respondents.

*September 13—October 9, 1956.*

For the appellant there were briefs and oral argument by *Clarence E. Smith* of Menomonie.

For the respondents there was a brief and oral argument by *Dennis B. Danielson* of Eau Claire.

BROADFOOT, J. The executor urged that sec. 330.21 (5), Stats., applied, which would limit recovery to services furnished within a period of two years prior to the date of death. That section refers to actions to recover unpaid salary, wages, or other compensation for personal services. The word "service" has a variety of meanings. In any given case its meaning is dependent upon the context or the sense in which it is used. Under the statute referred to, in view of all of the circumstances in this particular case, service would mean work done by one person at the request of another and would refer to a relationship of master and servant. The word "personal" means appertaining to the person or limited to the person. The only cases involving claims against estates in which this court has applied the two-year statute have been cases involving strictly personal services to a decedent within his own home. In this case, the board, lodging, and laundry were furnished at the home of the claimants. The trial court was correct in his determination that the two-year statute is not applicable upon the facts before us.

It is contended by the claimants that no statute of limitations applies because nothing was due under their agreement with the decedent until the time of his death. The record will not support any finding of an express contract. The trial court so found, but determined that there was an implied contract to pay the reasonable value of the board, room, and laundry furnished. Therefore, the six-year statute is applicable upon the record here.

The record is indefinite in many respects. It appears that the decedent absented himself from the home of claimants many times and for periods as long as six months at a time.

The record establishes that during the summer of 1948 the decedent was at a lake for a period of six months. It also shows that he went to the lake again in the summer of 1949. Just how long he was away on that occasion can be determined only by the statement of one of the claimants that "I don't think he stayed there that long." She was comparing his absence in 1949 with that in 1948. He also stayed with another neighbor from November, 1951, to May, 1952, a period of six months. When that appeared in the record the claimants moved to amend the claim to omit that period, and the motion was granted. He was hospitalized for ten days to two weeks in July, 1952, and ten days in May, 1954. No accurate account was kept of the periods of time during which the decedent was absent from the home of the claimants. From the incomplete record before it, the trial court found that he was absent for a total of eighteen months during the period for which the claim was filed. This finding is not attacked by either party. Six months of that time was prior to the six-year period which we are permitted to consider under the applicable statute of limitations. Therefore, during that period the decedent was absent for a total of one year. Claimants testified that during these periods of absence the decedent's room was always ready for him and that he would come in occasionally for his mail and for his laundry.

The trial court allowed claimants the sum of $80 per month for four years and $120 a month for the last two years. The latter figure was based upon the trial court's opinion that during the last two years of his life the decedent was ill and required special care. As to the value of the services, the following appears of record:

Sometime prior to 1947 claimants purchased 120 acres of land upon which were located a small house and a barn. The barn had evidently been damaged by a windstorm and was not used. The purchase price of the land and the build-

ings was $2,000. The claimants put in electric lights and gradually made other improvements. The house contained four rooms with two closets and a half room upstairs. In November, 1954, a bathroom was installed. Prior to that there were no toilet facilities within the home. The decedent went to the neighbors for baths. The decedent was furnished with his own room, 10x12 in size, and a closet. The furnishings were adequate and belonged to the claimants. The home was heated with an oil stove in the living room and a kitchen range. He was furnished with ample food and was permitted to use the living room and to watch television there. In 1952 he was hospitalized because of a heart condition and thereafter he was placed on a salt-free diet by his physician. Except for the salt-free diet, the record is barren of any other special care. He remained in bed occasionally and upon those occasions his food was served to him in his room. Mrs. Brunstad was employed as a telephone operator and bookkeeper in Colfax and her husband was an electrician, who worked for the most part for neighboring farmers. The home was situated five or six miles from Colfax. The household consisted of the claimants and their small son and Mrs. Brunstad's mother, who was seventy-six years of age in the year 1955.

The claimants called one witness as to the value of the board and room furnished. He operated a convalescent home at the village of Fairchild in Eau Claire county, which is approximately 60 miles from Menomonie, the county seat of Dunn county. His patients were housed in a brick building with central heat and with seven bathrooms. He estimated the replacement cost of his facility at $250,000 to $300,000. He testified that in his opinion the reasonable value of the board and room furnished to the decedent was $150 a month. That was his charge for bed patients in his home. His minimum rate for people who were not bed patients was $90 per month. On cross-examination he testified that the rates in boarding

homes in that vicinity were from $45 to $65 per month. The executor called as a witness the director of the Dunn county welfare department. He testified that the prices for board, room, laundry, and occasional service, to the extent of taking a tray to a room, were $45 to $65 per month in Dunn county. Where special diets were required there was an extra payment not to exceed $5 per month.

We find no testimony in the record that would support an allowance in excess of $65 per month for the board and room furnished to the decedent until he was placed on the salt-free diet, at which time an additional $5 per month could be allowed. There was testimony that in a Lutheran Home at Mondovi the charge was $4 per day for people living there. There is no testimony as to the type of facilities furnished or offered in that home. There was also testimony that at a Lutheran Home in Eau Claire the charge was $66 per month, which included board, room, and laundry. Again there is no testimony as to the type of facility or the care provided.

From the record before us the claimants would be entitled to the sum of $65 per month for three years, $70 per month for two years, and the value of the room that was reserved for the use of the decedent while he was absent, a period of one year. There is nothing in the record from which we can determine the reasonable value of that room during the one-year period when the room was available but used infrequently by the decedent. It will be necessary, therefore, to remand the record so that testimony can be taken and determination thereof made.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings and for the entry of a judgment in conformity with this opinion.