Estate of Barnhart: Nichols, Appellant, vs. Morris, Executrix, Respondent.

*June 2—June 26, 1958.*

For the appellant there was a brief and oral argument by *Edward S. Grodin* of Milwaukee.

For the respondent there was a brief and oral argument by *Morton D. Newald* of Milwaukee.

BROADFOOT, J. The claimant insists that the testimony reveals an oral contract between herself and the decedent that claimant would have a legacy of $5,000 in the decedent's will and that the determination of the trial court is against the

great weight and clear preponderance of the evidence. This requires a review of the pertinent testimony.

One of the witnesses was a sister of the claimant. She testified, over objection, to conversations with Mrs. Barnhart. The pertinent parts of her testimony are as follows:

"She told me that she was leaving my sister, Myrtle, $5,000 for the many nice things that she had done for her, and that she knew that she would continue to do for her."

"She would either tell me she was leaving $5,000 in appreciation, or otherwise she told me the many nice things she was doing—Myrtle was doing for her and she would never be sorry for doing anything."

When claimant was on the stand she was precluded on her direct examination from testifying to conversations with Mrs. Barnhart. However, on cross-examination she was asked the following question and made the following answer:

"*Q.* You claim that you have an agreement with Lucy Barnhart to reimburse you for services, is that correct? *A.* I didn't have an agreement. She told me she was leaving me this money and she knows I would never let her down the rest of my life, and that I would always be doing something."

Claimant further testified on cross-examination that she learned in August, 1956, that the will of February 26, 1949, made no provision for her. She was then asked why she did not file a claim with Mrs. Barnhart at that time and she made the following answer:

"Why, it never dawned on me. When she discovered that I wasn't mentioned in her will, she said that has to be changed. I promised you $5,000, and I want you to have it."

On redirect examination the following questions were asked and she made the following answers:

"*Q*. Did you expect to get paid for the service that you rendered to her? *A*. Yes.

"*Q*. How much did you expect to get paid? *A*. $5,000."

The record discloses that on July 22, 1947, Mrs. Barnhart executed a will containing the following paragraph numbered "Fourth:"

"I give, devise and bequeath to my niece, Myrtle Ollie Nichols, the sum of Five thousand ($5,000) Dollars."

The claimant further testified that she first determined that she wanted to be paid for her services when she learned of the bequest to her in the will of July 22, 1947.

The claimant relies on language in *Estate of McLean*, 219 Wis. 222, 226, 262 N. W. 707, as follows:

"(1) That the decedent promised to make provision for the claimant in his will clearly appears. If he had not made a will pursuant to the promise to do so, we might feel that a valid contract was not sufficiently established. The rule is that such contracts must be established, not only by a preponderance of the evidence, but by evidence that is clear and convincing. A mere preponderance of the evidence will not support such a contract. Such a contract must be definite enough in its terms to permit of specific performance or to indicate the damages to be allowed for its breach. The contract found might perhaps be held not to be sufficiently established under this rule, were it not for the fact that the decedent, by making the will, had made certain that which the evidence as to the making of the contract left uncertain. The rule seems to be that where a will is made pursuant to a promise to make one supported by a past consideration, the contract will be enforced. It is not claimed that the agreement here involved was without consideration. The promise of forbearance to sue, even if no liability existed, operated as a consideration for the promise to provide by will. One may buy his peace and must pay for it what he agrees to pay. What the testator does by a will made pursuant to the promise is taken as what he intended to do in fulfilment of it. What was left uncertain in the instant case

was made certain by the testator's performance of his promise."

The claimant contends that language in the above quotation should be interpreted to mean that if there is a promise to make a bequest followed by the making of a will in fulfilment of the promise that establishes the terms of an effective contract to provide for a claimant in a will and resolves any uncertainty as to the terms of a contract. That is an unwarranted assumption. To properly interpret the language there used it will be necessary to give the facts in the *McLean Case*. Those facts as recited in the decision are as follows (p. 223) :

"While working for the decedent upon his farm, the claimant, a brother of the decedent, fell down a ladder and received injuries to his hip which resulted in the injured leg being some five or six inches shorter than the other, and which incapacitated him from ability to support himself. He threatened to sue the decedent to recover for his injuries. The decedent agreed, as the court found, in consideration of the claimant's foregoing such suit, to make provision for him by will sufficient to obviate his becoming a public charge under the poor laws. Pursuant to this agreement, Neil McLean, being competent, duly executed a will by which he devised a farm to a cousin, Hugh McLean, as trustee to pay the net income thereof during his life to his brother, Hugh, the claimant, with remainder to a sister of the testator, and gave his personal property to his wife in trust to use the income therefrom during her life with power to sell livestock without accounting therefor, and with provision that such part of the personal property as remained at her death should pass to his said sister."

One of the terms of any effective agreement of the nature therein discussed is the amount thereof. The agreement to provide for the claimant in the *McLean Case* was an amount sufficient to obviate the claimant becoming a public charge under the poor laws. In the *McLean Case* it was established by the proper amount and kind of evidence that the decedent

promised to make provision for the claimant in his will. The uncertainty was only as to the amount. That was established by the terms of the will itself.

In the present case the testimony shows at best a mere naked promise to make a bequest to the claimant. The testimony does not establish any agreement on the part of the claimant to do anything. In fact, the testimony shows there was no expectation on the part of the claimant to be paid for her services until the will had been executed and the claimant learned of the provision made for her therein. There was no reference in the paragraph above quoted that the provision was made because of any agreement and the record fails to establish by clear and convincing evidence that such an agreement was ever made.

As to the kind of services rendered, it is clear that they were personal services and that the two-year statute of limitations was applicable. As the trial court stated, the services were not too arduous or frequent. There was no testimony in the case as to the value of the services. However, the trial court found they had value and found the value thereof to be $400. Since there was no motion to review, that finding will stand.

The claimant argues that the decedent herself set the value upon the services rendered at the sum of $5,000 and that the decedent had a right to pay more than the services were actually worth. That might be true if an agreement had been established by the testimony. Since there was no effective agreement to make the provision by will the claimant is limited to the value of the services actually performed.

The claimant further states that the two-year statute of limitations should not be applied because by the agreement the services were not to be paid for until Mrs. Barnhart died. That argument also fails because no effective agreement was established.

*By the Court.*—Judgment affirmed.