ESTATE OF RIEBS: MARINE NATIONAL EXCHANGE BANK OF MILWAUKEE and another, Executors, Appellants, v. QUARLES, Special Administrator, Respondent.

*September 10—October 6, 1959.*

For the appellants there was a brief by *Steinmetz & Steinmetz* of Milwaukee, and oral argument by *C. R. Steinmetz*.

For the respondent there was a brief by *Quarles, Herriott & Clemons* of Milwaukee, and oral argument by *Louis Quarles*.

MARTIN, C. J. The question is whether the estate of the widow is entitled to the said salary by virtue of sec. 103.39 (2), Stats., or whether it is payable to the appellants under sec. 318.01 as executors of the estate of Arthur J. M. Riebs. The trial court decided in favor of the widow's estate.

Sec. 103.39 (1), Stats., provides:

"Every person, firm, or corporation engaged in any enterprise or business for pecuniary profit within the state of Wisconsin shall as often as on the fifteenth and on the last day of each month pay to every employee engaged in its business, except those employees engaged in hospitals or sanatoriums, logging operations, farm labor, domestic service, or employees employed on a salary basis equal to at least $350 per month, all wages or salaries earned by such employee to a day not more than sixteen days prior to the date of such payment. Any such employee who is absent at the time fixed for payment or who for any other reason is not paid at that time shall be paid thereafter at any time upon six days' demand. Any such employee, except sales agents employed on a commission basis, not having a written contract for a definite period who quits his employment shall be paid in full upon three days' demand, and any employee who is discharged shall be paid in full within three days. No person, firm, or corporation coming within the meaning of this section shall by special contract with employees or by any other means secure exemption from the provisions of this section and each and every employee coming within the mean-

ing of this section shall have a right of action against any such person, firm, or corporation for the full amount of his wages due on each regular payday as herein provided, in any court of competent jurisdiction. Whenever such regular payments cover wages earned to a date more than eight days prior to the day of payment in the event the day fixed for the semimonthly payment falls on Sunday or a holiday payment shall be made on the previous business day."

Sub. (2) provides:

"In case of the death of an employee to whom wages are due, the full amount of the wages due shall upon demand be paid by the employer to the wife, children, husband, or other dependent living with such employee at the time of his death. In the case of an employee of the state, the amount of the wage due shall include all unused vacation allowance. Any employer may not less than five days after the death of an employee and before the filing of a petition for letters testamentary or of administration in the matter of the decedent's estate, make payment of the wage due the deceased employee to the wife, children, father or mother, brother or sister of the decedent, giving preference in the foregoing order; or, if no such relatives survive, the employer may apply such payment or so much thereof as may be necessary to paying creditors of the decedent in the order of preference prescribed in sec. 313.16 for satisfaction of debts by executors and administrators. The making of payment in such manner shall be a discharge and release of the employer to the amount of such payment. As used in this subsec. 'employer' includes the state and any of its subdivisions and any employer defined under subsec. (1)."

These subsections are a part of the law governing regulation of industry and employment. They clearly indicate that the intent of the legislature was to secure prompt and regular payment of relatively small amounts of wages and salaries to employees and, in case of their death, to those persons dependent upon them.

The customary and accepted usage of the terms "wages" and "salary" is defined in Webster's New International Dictionary (2d ed. 1954), as follows:

Wages: "Pay given for labor, usually manual or mechanical, at stated intervals, as distinguished from salaries or fees."

Salary: "The recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services, esp. to holders of official, executive, or clerical positions; fixed compensation regularly paid, as by the year, quarter, month, or week; stipend—now often distinguished from wages."

It would appear that the language of the sections above referred to, as applying to the payment of "wages," uses that term in its common meaning of money paid to an employee for manual or physical work done usually on an hourly, daily, or piecework basis and distinguished from "salary" as a fixed payment at regular intervals for services. This is evidenced by the specific exclusion in sub. (1) of sec. 103.39, Stats., of persons earning a "salary" of $350 or more per month. It is further shown by the fact that in ch. 262, Laws of 1931, the legislature amended sec. 103.39 to provide, in addition to the criminal penalty for failure on the part of the employer to pay each employee the amount of wages due him at the time and under the conditions required therein:

"In addition to the criminal penalty herein provided, every person, firm, or corporation violating the provisions of this section shall be liable for the payment of the following increased wages or salaries: Ten per cent if the delay does not exceed three days; twenty per cent if the delay is more than three days, but does not exceed ten days; thirty per cent if the delay is more than ten days, but does not exceed twenty days; forty per cent if the delay is more than twenty days, but does not exceed thirty days; fifty per cent if the delay is more than thirty days; *but in no event shall such increased wages or salaries exceed fifty dollars.*"

These provisions clearly lend no aid to the interpretation placed upon the sections by the trial court.

What respondent is trying to do is to employ statutory construction where none is warranted. As stated in *Beck v. Hamann* (1953), 263 Wis. 131, 135, 56 N. W. (2d) 837:

". . . the rule that no construction is permitted where no uncertainty or ambiguity exists, is so elementary as to require no citation of authority. The words of the statute are clear and must be given their obvious and ordinary meaning. Appellant's argument is an attempt to bring uncertainty or ambiguity into the plain language of the section and then apply rules of construction to arrive at the meaning he claims it should have."

The facts in this case do not present the situation which it was the obvious purpose of sec. 103.39 (1) and (2), Stats., to meet. Arthur J. M. Riebs was president of his company; his salary was $20,000 per year. For reasons he did not disclose he permitted more than $11,000 of that salary to remain in the company without designating anyone to whom it should be paid upon his death. It is therefore subject to the provisions of sec. 318.01 governing distribution of personal property. We do not see how a statute designed for the regulation of industry and employment can, without specific provision that it should, take precedence over the laws governing descent and distribution.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment as provided under sec. 318.01, Stats.