ESTATE OF RIENOW: SKAUGSTAD, Respondent, v. WINCH, Executor, Appellant.*

*March 8—May 1, 1962.*

* Motion for rehearing denied, with $25 costs, on June 29, 1962, WILKIE, J., taking no part.

For the appellant there was a brief and oral argument by *Thomas H. Winch* of Mazomanie.

For the respondent there was a brief and oral argument by *Douglas Nelson* of Madison.

DIETERICH, J. The facts in this case present the following issues: (1) Whether the testimony establishes an express agreement between Violet Skaugstad and Fred Rienow to compensate her for services she rendered in behalf of his brother, William Rienow, and (2) whether there was an express agreement between Violet Skaugstad and Fred

Rienow that she would be compensated for the services rendered to him.

Violet Skaugstad worked and cared for William Rienow for one year prior to his death, and for Fred Rienow for six years prior to his death.

The testimony established that after William's death, Violet Skaugstad commented in the presence of Fred and others that she would have to make a claim against the estate of William for money due her. According to the testimony, Fred, beneficiary of William's estate, stated that if Violet Skaugstad did not make a claim against William's estate, he would compensate her for services rendered to William in his, Fred's, will. No claim was ever filed by Violet Skaugstad against the estate of William Rienow.

The provision contained in Fred Rienow's codicil to his will, under date of March 8, 1959, is as follows: "I give and bequeath the sum of $1,000 to Violet Skaugstad, Mazomanie, Wisconsin."

The trial court determined that there was sufficient testimony to establish that a valid oral agreement had been entered into between Violet and Fred.[1] We determine that there was sufficient testimony to establish that an express agreement had been entered into between Violet Skaugstad and Fred Rienow in that she would be compensated in Fred's will for the services she had rendered in behalf of his brother, William Rienow.

Violet Skaugstad's claim against the estate of Fred Rienow, with regard to services performed for William was $1,000. Therefore, her recovery for such services is limited to the amount of her claim. The testimony supports a finding that her claim for such services would be satisfied by the payment of the legacy contained in the codicil.

[1] See *Frieders v. Estate of Frieders* (1923), 180 Wis. 430, 193 N. W. 77; *Murtha v. Donohoo* (1912), 149 Wis. 481, 134 N. W. 406, 136 N. W. 158.

The second part of the claim against the estate of Fred Rienow by Violet Skaugstad was for the sum of $14,400 for the care of Fred Rienow. William Rienow, Fred's brother, was an uncle by marriage to Violet Skaugstad. It was not shown whether Fred Rienow was otherwise related to claimant. Where a claimant is not a relative of the deceased, there is no presumption that personal services rendered by the claimant to the deceased were gratuitous. *Estate of Breitzman* (1940), 236 Wis. 96, 294 N. W. 489.

The testimony offered at the trial indicated that Fred Rienow had made statements to the effect that he appreciated what Violet Skaugstad had done for him and he intended to remember her in his will. Violet Skaugstad testified that she fully intended to be compensated for her services, that such services were not voluntary and that she often went to Fred Rienow's home after being requested to do so. The trial court concluded that the testimony offered was sufficient to show an express agreement between the parties.

The evidence relied on by the trial court to support the proposition that there was an express agreement between Fred Rienow and Violet Skaugstad consisted primarily of statements made by Fred to various friends and neighbors. Mrs. Harold Fey testified that Fred Rienow had said that: "I couldn't get along without her [referring to Violet]" and that he intended to "make everything right with her." Harold Fey's testimony is that Fred had stated that Violet was doing a lot for him and he was going to see that she was well taken care of. Fred, according to the testimony of Nathan Smith, had told him "that Mrs. Skaugstad was awful good to him" and that "she worked awful hard" and was "going to get paid for it." Mrs. Harold (Inez) Schanel testified that Fred in response to a question asked by Mrs.

Schanel's husband said that he would take care of Violet and that he was going to see that she got paid.

There was other similar testimony by Violet's husband and daughter. As far as can be determined from the record these statements were not made in Violet's presence. The evidence fails to sustain the trial court's finding that an express agreement existed between Violet Skaugstad and Fred Rienow for services rendered to Fred.

The record does not contain any evidence that Fred and Violet had ever come to any mutual agreement with respect to her being compensated for services rendered to him personally. The distinction between an express and an implied contract is well made in *Estate of Ghent* (1935), 217 Wis. 631, 634, 259 N. W. 865, quoting the following language from the early case of *Tyler v. Burrington* (1876), 39 Wis. 376, 382:

" 'And mere expectation on his part to pay and on her part to receive wages, would not constitute an express contract, unless by mutual expression of the expectation it became consensual. Resting in the several minds of the parties, unexpressed to each other, independent and changeable, their expectations would tend rather to rebut than to establish an express contract. For upon contract expressly made, expectation would cease. In such cases expectation looks rather to an implied than an express contract.' "

The testimony contained in the record of the instant case does not establish that such expectation ripened into an express contract to pay at death.

In the absence of an express contract, a contract may be implied under circumstances as they exist in this case.[2] The recovery is based on *quantum meruit*, the reasonable value

[2] *Estate of Ansell* (1957), 2 Wis. (2d) 1, 85 N. W. (2d) 786, and *Estate of Gifford* (1944), 244 Wis. 570, 12 N. W. (2d) 921.

of services rendered to the deceased Fred Rienow by the claimant. Therefore, the two-year statute of limitation for personal service applies,[3] and recovery is limited to the reasonable compensation for services performed for the decedent within the two years immediately prior to his death.[4]

From the record it is impossible to determine what was the reasonable value of that part of the services rendered in behalf of Fred within two years prior to the death of the deceased and this requires the case to be remanded for such determination.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

---

[3] Sec. 330.21 (5). "Any action to recover unpaid salary, wages, or other compensation for personal services, except fees for professional services."

[4] *Estate of Fredericksen* (1956), 273 Wis. 479, 78 N. W. (2d) 878, and *Estate of Barnhart* (1958), 4 Wis. (2d) 526, 91 N. W. (2d) 97.