IN RE VOLUNTARY ASSIGNMENT OF FEDERAL WHOLESALE MEATS & FROZEN FOODS, INC., Assignor: LAYTON INVESTMENT COMPANY, Appellant, v. HARRIS, Assignee, Respondent.

*No. 259. Argued May 7, 1969.—Decided June 3, 1969.*
(Also reported in 168 N. W. 2d 70.)

22

For the appellant there was a brief by *Krawczyk & Duginski* of Milwaukee, and oral argument by *Michael J. Duginski.*

For the respondent there was a brief by *Burke & Schoetz,* attorneys, and *John J. Burke* and *Charles F. Schroeder* of counsel, all of Milwaukee, and oral argument by *Mr. Schroeder.*

ROBERT W. HANSEN, J. This appeal challenges the holding of the trial court that the security interest of appellant, Layton Investment Company, in the accounts receivable of Federal Wholesale Meats & Frozen Foods, Inc., is subordinate to the interest of respondent, the assignee for the benefit of creditors. The challenge requires that several questions be answered.

1. *When did appellant "perfect" its security interest?*

With exceptions not here material, sec. 409.301, Stats., provides that an unperfected security interest is subordinate to the rights of a lien creditor. Sub. (3) of this statute includes within the definition of a lien creditor "an assignee for benefit of creditors from the time of the assignment." So when Layton's security interest was "perfected" is a determining factor.

The trial court held that Layton's interest was perfected on March 7, 1967, the date of filing with the secretary of state. We agree.

Not being one of the security interests listed in sec. 409.302 (1), Stats., to which filing requirements do not apply, a security interest in accounts receivable must be properly filed in order to be perfected. The applicable filing requirement, sec. 409.401 (1) (c), provides for filing both in the office of the secretary of state and in the office of the register of deeds in the county where the debtor's principal place of business is located. This statute means exactly what it says, and requires exactly what it requires: Filing in both the office of the secre-

tary of state and in the office of the register of deeds in the county where the debtor's principal place of business in this state is located if the debtor has a place of business in this state.[1] The appellant's compliance with the twin requirements of the statute occurred after the assignment for benefit of creditors.

2. *When did the respondent assignee become a "lien creditor"?*

When does an assignee for benefit of creditors become a lien creditor? When the assignment is made? When the assignment is filed in court?

The trial court held that the respondent as assignee for the benefit of creditors became a lien creditor on June 6,

[1] For its cogent reasoning as well as correct interpretation, we cite *In re Buschmann* (Ref. Bankruptcy, E. D. Wis. 1967), 4 U. C. C. Reporting Service 260, holding: ". . . the language of the statute is quite clear. In order to perfect a security interest on business assets, the proper place to file is in the office of the Secretary of State. In addition, if the debtor has a place of business in this state, then notice must also be filed in the office of the Register of Deeds in the county where the debtor's principal place of business is located. It could hardly be argued that filing only in the office of the local Register of Deeds is sufficient to perfect the security instrument when this is merely an additional requirement. A stronger argument could be made if filing were accomplished only in the office of the Secretary of State, but even then, it is doubtful whether such filing would be sufficient. It seems reasonable to hold that filing must be accomplished in both places in order to perfect a security interest in business assets. This court therefore construes sec. 409.401 of the Wisconsin Statutes to require that notice of a security instrument covering business assets must be filed in the office of the Secretary of State and also in the office of the Register of Deeds in the county where the debtor's principal place of business is located. Failure to file in either place is a failure to perfect the security interest in the property." *See also In re Advertising Distributors of America* (N. D. Ohio 1965), 3 U. C. C. Reporting Service 225; *In re Goettner* (Ref. Bankruptcy, E. D. Pa. 1964), 2 U. C. C. Reporting Service 653; *In re McQuaide* (Ref. Bankruptcy E. D. Vt. 1968), 5 U. C. C. Reporting Service 802, reaching the same result.

1967, the date on which the assignment was made and one day before appellant filed his financing papers with the secretary of state. We agree.

In his written decision the trial judge reviews and relies upon a Pennsylvania case where the court, in affirming the decision of a referee in bankruptcy, held "Since the reclaimant [the secured party] had filed neither financing statement with the Secretary of the Commonwealth until after the assignment for the benefit of creditors had been made, she had not complied with the statutory requirements to perfect her security interest, and the rights of the assignee for the benefit of creditors would ordinarily be superior to hers." [2]

In the Pennsylvania case the United States referee in bankruptcy had held that ". . . when the bankrupt made the assignment for the benefit of its creditors, petitioner's unperfected security interests became immediately subordinate to the assignee's rights in the accounts receivable and inventory which were the subject of those interests . . . The assignee was therefore, a 'lien creditor' as defined by Section 301, and superior to petitioner." [3] It should be noted, as the trial judge in this case points out, that Pennsylvania like Wisconsin has incorporated sec. 9–301 of the Uniform Commercial Code without change, as has the state of Wisconsin, and that Pennsylvania again like Wisconsin requires dual filing to perfect a security interest in accounts receivable. The facts in the Pennsylvania case are similar to the facts here and the decision is properly given weight because we are in a field in which similar judicial construction of identical provisions in the uniform code serve the purpose of the legislation: uniformity. [4]

---

[2] *In re Komfo Products Corp.* (D. C. Pa. 1965), 247 Fed. Supp. 229, 234.

[3] *In re Komfo Products Corp.* (Ref. Bankruptcy E. D. Pa. 1964), 2 U. C. C. Reporting Service 354, 359.

[4] *See Levine v. Pascal* (1968), 94 Ill. App. 2d 43, 56, 236 N. E. 2d 425, commenting on the *Komfo* decision: "Though this holding

However, we do not feel that we are here construing a statute. We are merely reading it and applying it. No construction of a statute is involved where there is no uncertainty or ambiguity.[5] Courts are not to go outside a statute to create an ambiguity and then to resolve the created ambiguity by what is found outside.[6]

Sec. 409.301 (3), Stats., is clear on its face. The definition of a lien creditor is stated to include ". . . an assignee for benefit of creditors *from the time of the assignment* . . ." (Emphasis supplied.) The italicized portion can refer only to the time the assignment was entered into. It is true that an assignee has no rights in the debtor's property until he files his assignment. Sec. 128.02 (1), provides that before taking possession of the debtor's property, the assignee shall file that assignment in the circuit court and deliver a bond. However, this does not alter the granting of the status of lien creditor "from the time of the assignment." If the framers of the uniform code had intended that the status of lien creditor be deferred until the time of filing of the assignment in court, they could, would and should have so stated. As this court has elsewhere said, ". . . whatever rationaliae may be offered to the contrary, and they are numerous, reason must yield to the plain meaning of the statute. . . it is not within the province of this court to seek secondary sources of legislative intent where the meaning of the statute is plain and unambiguous." [7]

3. *Did the injunction issued by the court commissioner invalidate the assignment for the benefit of creditors?*

from a foreign jurisdiction is not binding upon us, yet it is particularly persuasive in view of the recent intrusion of the Commercial Code as law in this state and the uniformity of our law compared with substantive provisions of the Commercial Code in Pennsylvania and other sister jurisdictions."

[5] *Estate of Riebs* (1959), 8 Wis. 2d 110, 98 N. W. 2d 453.

[6] *Estate of Ries* (1951), 259 Wis. 453, 49 N. W. 2d 483, 50 N. W. 2d 397.

[7] *West Side Bank v. Marine Nat. Exchange Bank* (1968), 37 Wis. 2d 661, 669, 670, 155 N. W. 2d 587.

As part of the supplementary proceedings on its judgment against Federal, Layton secured an order from a court commissioner, dated March 2, 1967, reading in part: "that in the meantime, and until further order in the premises, the judgment Debtor, Federal Wholesale Meats & Frozen Foods, Inc., and Gene M. Ploeger, are hereby enjoined and restrained from making any transfer or other disposition of any property or other assets belonging to the judgment debtor not exempt by law from execution, and from interference therewith."

The effect of such court commissioner's order is set forth in an early Wisconsin case as follows:

"A summary proceeding supplementary to execution under the statute (R. S., secs. 3028 to 3038, inclusive), instituted after the return of an execution unsatisfied, is a substitute for a creditor's bill in equity, and is governed by the same rules of law in respect to the rights and priorities of parties affected by the proceeding, which control the equitable action.

"In creditors' suits, the general rule was that the creditor who, after filing his bill, obtained the first service of the subpoena upon the judgment debtor, thereby obtained a prior lien upon the equitable assets of such debtor." [8]

It is such a lien that appellant obtained on the equitable assets of the assignor by the court commissioner's order of March 2, 1967. However, such lien or, at least, priority of lien was dissolved three days later when the assignment for the benefit of creditors was made. The dissolution of lien and of the order designed to effectuate it follows from the operation of two statutes, both contained in ch. 128, providing:

"128.03. **Liens by legal proceedings; assignment.** When a lien has been obtained by legal proceedings against the property of a debtor he may, within thirty days thereafter, make an assignment of all his nonexempt prop-

[8] *Kellogg v. Coller* (1879), 47 Wis. 649, 655, 656, 3 N. W. 433.

erty for the benefit of all his creditors, whereupon such lien shall be dissolved and the property shall be turned over to the assignee."

"128.18 (6) That all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition or assignment hereunder, shall be deemed null and void in case a receiver is appointed or an assignee qualifies hereunder, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the receiver or assignee as a part of the estate of the debtor unless the court shall on due notice, order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the receiver or assignee for the benefit of the estate."

The assignment for the benefit of all creditors here involved was well within thirty days of the supplementary proceedings before the court commissioner ancillary to the county court judgment and controlled therefore by sec. 128.03, Stats. Such assignment was also well within the four-month period within which sec. 128.18 (6) applies. The order and proceedings before the court commissioner became null and void as to the assignee. The priority of either receiverships or assignments for the benefit of creditors over supplementary proceedings brought by individual creditors is clear under sec. 128.03.

The trial court found that the appellant did not perfect his security interest in the accounts receivable of the debtor corporation prior to the time the assignee became a lien creditor and that the accounts receivable are to be vested in the assignee as an asset of the debtor's estate. We agree.

*By the Court.*—Order affirmed.