Robert D. ERDMAN, Plaintiff-Appellant-Cross
Respondent,†

v.

JOVOCO, INC., a foreign corporation, Defendant-
Respondent,

CROWN COCO, INC., Defendant-Respondent-Cross
Appellant.

Court of Appeals

*No. 92-0980. Submitted on briefs November 9, 1992.—Decided
December 15, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review granted.

For the plaintiff-appellant-cross-respondent, Robert D. Erdman, the cause was submitted on the briefs of *Stuart J. Krueger* of *Bye, Krueger & Goff, S.C.* of River Falls.

For the defendant-respondent-cross-appellant, Crown CoCo, Inc., the cause was submitted on the brief of *James T. Remington* of *Remington Law Offices* of New Richmond.

For the defendant-respondent, Jovoco, Inc., the cause was submitted on the brief of *William G. Thiel* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    Robert D. Erdman appeals a judgment dismissing his action under sec. 103.455, Stats., and holding that the compensation he received in the form of a commission was not wages. The central issue in this case is whether the term "wages" as used in sec. 103.455 includes the additional compensation of commissions. Erdman's former employers, Jovoco, Inc., and Crown Coco, Inc., contend that Erdman's commissions, which were computed independently of his salary, were not wages as that term is used in sec. 103.455.[1] We agree and therefore affirm the judgment of the circuit court.

---

[1] Jovoco and Crown Coco also argue that the statute of limitations had run on Erdman's claims, that the requirements of sec. 103.455 were met and that sec. 103.455 required Erdman to bring

Erdman started as a store manager for Crown Coco in the fall of 1983. The store is a gas station/convenience store. He continued to work for Crown Coco through July 1986. In August 1986, ownership of the store changed to Jovoco. Erdman remained in essentially the same capacity for Jovoco from August 1986 through December 1989.

Erdman's compensation was a combination of a set salary, plus a commission. The commission was computed according to the Crown Coco Manager's Manual,[2] which provides in part:

---

his claim before the Department of Industry, Labor and Human Relations before proceeding to the circuit court. Because we conclude that sec. 103.455 does not apply, we need not reach these arguments.

[2] Erdman was shown the manager's manual in July 1986 while working for Crown Coco, and stated that the deduction method was the same both before and after he received the manual. On September 30, 1983, Erdman acknowledged receipt of a Crown Coco Statement of Policy that stated "If there is a cash or merchandise shortage at a station store, it may be deducted from the manager's commission or bonus, but in no event can it be taken from the manager's salary or any other employee's pay at the station store." In addition to acknowledging receipt of the statement via signature, Erdman signed again immediately below a section that read:

IF EMPLOYED, I HEREBY AGREE TO THE FOLLOWING CONDITIONS OF EMPLOYMENT.

1. I have read the attached "Statement of Policy" and agree to be bound by it.

2. I agree to follow all credit card, check cashing, and account receivable procedures as described by my employers and agree to be responsible for any infractions of these procedures.

"I HAVE READ THE ABOVE AND I UNDERSTAND THE CONDITIONS OF EMPLOYMENT."

. . .

b. All commissions are based on petroleum gallonage plus merchandise sales.

c. All cash and merchandise shortages during each month will be deducted from these gross earnings.

d. Excess hours over budget (other than managers) will be deducted from your commission at the current minimum hourly rate.

e. Deductions will be made for all out of policy checks as well as all out of policy credit cards returned.

f. Other deductions for commissions could include missing supplies, equipment, etc., uncontrollable budgets including store utilities, etc.

g. Any shortages in excess of commission earnings will be carried forward to the following month.

h. Commissions, if earned, are presented to each manager on a monthly basis.

The commission deductions never affected Erdman's salary. If the deductions exceeded commissions for a given period, Erdman would still receive a full salary, although he would receive no commission and the deficit would carry over to the next period's commission tabulation. If a deficit existed upon termination of employment, the employe was not held responsible for the deficit.

Erdman brought an action against Crown Coco and Jovoco contending that the commission deductions were

Jovoco adopted the Crown Coco policy and manual when it took over the gas station/convenience store in August 1986.

in violation of sec. 103.455, Stats. This section reads in part:

> No employer shall make any deduction from the wages due or earned by any employe, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction or unless the employer and a representative designated by the employe shall determine that such defective or faulty work, loss or theft, or damage is due to worker's negligence, carelessness, or wilful and intentional conduct on the part of such employe, or unless the employe is found guilty or held liable in a court of competent jurisdiction by reason thereof. If any such deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by said employe.

Both Jovoco and Crown Coco argued that the requirements of sec. 103.455 do not apply to the commission deductions because these commissions are not "wages" as contemplated by sec. 103.455. The trial court agreed and dismissed Erdman's complaint. Erdman appealed.

Interpretation of a statute is a question of law appellate courts review without deference to the trial court's reasoning. *State v. Wittrock*, 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984). The sole purpose of statutory review is to ascertain the intent of the legislature. *In re J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). In interpreting a statute, the first recourse is to its plain language. If the meaning of the statute is clear and unambiguous on its face, resort to extrinsic aids for purpose of statutory construction is improper.

*State v. Martin*, 162 Wis. 2d 883, 893-94, 470 N.W.2d 900, 904 (1991). If a statute is ambiguous, the court looks to its content, subject matter, scope, history and the object to be accomplished in order to arrive at its reasonable meaning. *Boltz v. Boltz*, 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986). A statute is ambiguous if reasonable persons could disagree as to its meaning, and whether a statute is ambiguous is a question of law. *Id.*

Section 103.445, Stats., does not define "wages" nor is the term defined elsewhere in ch. 103. Although Erdman contends that caselaw shows that his commissions are sec. 103.455 wages, *see infra*, Wisconsin courts are silent on whether commissions are "wages" within sec. 103.455 where the employe receives a base salary and commissions on top of that salary. Therefore, interpretation of sec. 103.455 in this regard presents a question of first impression.

Reasonable persons could conclude that "wages" within sec. 103.455, Stats., means any form of compensation whatsoever. Reasonable persons could also conclude that "wages" means only an employe's base salary, only compensation given for manual labor or only compensation given for nonmanagement positions. Reasonable persons might look to sec. 109.01(3), Stats., for the definition of wages or might look to a dictionary definition of wages that distinguishes it from salary. *See In re Riebs*, 8 Wis. 2d 110, 113-14, 98 N.W.2d 453, 455 (1959). Reasonable persons might conclude that compensation paid for human labor itself is wages, but compensation paid as commissions for the end product or the fruit of one's labor is something other than wages. *See Saunders v. DEC Int'l, Inc.*, 85 Wis. 2d 70, 73, 270 N.W.2d 176, 177 (1978). Indeed, reasonable persons could find a

plethora of different definitions for "wages" within sec. 103.455. We conclude that the sec. 103.455 term "wages" is ambiguous.

Erdman contends that two cases dealing with sec. 103.445, Stats., mandate a conclusion that these commissions are wages. We disagree. In *Zarnott v. Timken-Detroit Axle Co.*, 244 Wis. 596, 600-01, 13 N.W.2d 53, 54-55 (1944), the supreme court held that the compensation paid to machine operators paid on a piecework basis with guaranteed minimum hourly rates was covered by sec. 103.455. Therefore, the employer could not deduct from the employe's wages for defective pieces if a foreman determined the defect was due to the carelessness of the employe. In *Donovan v. Schlesner*, 72 Wis. 2d 74, 80-82, 240 N.W.2d 135, 139 (1976), the court held that the statute applied to compensation earned by an attendant at a gas station, who made $1.85 an hour and had deductions taken from his weekly pay for shortages determined by comparing the property or items on hand with the amounts entered into the books representing sales.

However, we note that in neither *Zarnott* nor *Donovan* were the deductions taken only from a portion of the employe's compensation, be it referred to as commission, bonus or anything else. In both instances, the employer had the ability to deduct from an employe's entire earnings. Thus, the employe's compensation could be shrunk to oppressive levels. Here, the situation is quite different. The employe receives a salary that is paid regardless of performance. While the commission portion of the compensation is tied to performance, the employe's earnings will never fall below his or her salary level. They can only increase. Thus, the rationale of *Zarnott* and *Donovan* does not apply. We must look elsewhere to determine if the legislature intended

Erdman's commissions to be covered by sec. 103.445, Stats.

Section 103.455, Stats., was originally enacted in 1931 at the request of the Wisconsin State Federation of Labor. Chapter 457, Laws of 1931. Both Jovoco and Crown Coco argue that sec. 103.455 is a penal statute and thus should be construed narrowly. However, we held that a statute is penal if it undertakes to redress a wrong to the public and remedial if it undertakes to remedy a wrong to the individual. *In re I.V.*, 109 Wis. 2d 407, 411, 326 N.W.2d 127, 129 (Ct. App. 1982) (citing 3 J. Sutherland, STATUTES AND STATUTORY CONSTRUCTION, 60.02 (C. Sands 4th ed. 1974)). Section 103.455 seeks to remedy a wrong to an individual, the employe, and thus is a remedial statute that should be construed broadly.

Nevertheless, even given a broad construction, we cannot conclude that the legislature intended to include commissions of the type available to Erdman as wages within sec. 103.455, Stats. An ambiguity within a statute should be resolved in a manner that will effectuate the legislative intent. *Forest Home Dodge, Inc. v. Karns*, 29 Wis. 2d 78, 86, 138 N.W.2d 214, 218 (1965). If the legislature had intended wages under sec. 103.455 to include all commissions, it could have defined them accordingly, as it did in ch. 109, Stats. Chapter 109 uses the word "wages" often and specifically defines the term as including "commissions." However, that definition, sec. 109.01(3), particularly states that it applies only to ch. 109. If the legislature had intended the sec. 109.01(3) definition to apply to sec. 103.455, it would either (a) have included this definition within ch. 103, or (b) not

limited the sec. 109.01(3) definition to ch. 109. It did neither.[3]

In *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 384 N.W.2d 325 (1986), the supreme court said that sec. 103.455, Stats., was aimed at preventing employers from using coercive economic power to shift the burden of a work-related loss from the employer to the employe. *Id.* at 45-46, 384 N.W.2d at 328-29. The consequences resulting from construing provisions of statute should be considered in determining the legislature's intention. *Boardman v. State*, 203 Wis. 173, 176, 233 N.W. 556, 557-58 (1930). If sec. 103.455 were to apply to commissions in this instance where the employe receives a salary unaffected by performance, the statute would surely apply to all commission and bonus programs operating in the state, regardless of the salary received by the employe. This would result in an overregulation of industry that the legislature surely did not intend when it enacted sec. 103.455 in 1931.[4] The statute was not

---

[3] The dissent appropriately notes that a cross-reference appearing in WEST'S WISCONSIN STATUTES ANNOTATED, which apparently is before the legislature at some point, directs the reader to sec. 109.01 for a definition of wages. Even if it is proper to look to this cross-reference for persuasion, we would draw an opposite conclusion from that of the dissent. We would conclude that the cross-reference alerted the legislature to the fact that wages were defined in ch. 109. If they knew this and chose not to give the term wages within sec. 103.455 the same definition, they meant for wages within sec. 103.455 to mean something other than the definition in ch. 109.

[4] Though we need not decide this issue, it is the position of the majority that the steps taken by Crown Coco upon hiring Erdman, *see* note 2, would not satisfy the requirements of sec. 103.455. The statute requires that the employer obtain authorization from the employee for each deduction made in each commission or bonus period.

meant to hinder or regulate employers instituting bonus or commission programs aimed at improving management performance.

In the 1959 case of *In re Riebs*, our supreme court held that the word wages, which appeared undefined in a statute, meant money paid to an employe for manual or physical work done usually on an hourly, daily or piecework basis, as distinguished from salary. While we do not contend that this case is directly on point, we feel it demonstrates that interpretation of the term wages to include all compensation runs counter to the common meaning of that word at the time sec. 103.455, Stats., was enacted. The *Riebs* court, 8 Wis. 2d at 114, 98 N.W.2d at 455, looked to WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1954) in determining the meaning of wages. If the meaning of wages in 1959 and 1954 distinguished this term from salaries, we conclude that the legislature in 1931 could not intend the bonuses or commissions paid to a manager on top of his salary to be included within "wages."

The dissent would have income of any type come under sec. 103.455,Stats., and states that the manner in which the income is calculated is irrelevant to the legislative purpose of the statute. We feel that the manner in which the compensation is calculated and the fact that an employe is guaranteed fair compensation is crucial to a determination that this portion of Erdman's compensation is not covered by the statute. In *Saunders*, the supreme court ruled that a two-year statute of limitations covering claims for salary, wages or other compensation for personal services did not apply to commissions owed an independent contractor because the independent contractor was paid for the results or fruits of his labor, rather than for the labor itself. *See id.* at 73, 270 N.W.2d at 177. While we do not reach the merits of the

283

statute of limitations issue in the instant case, it is clear that the flat guaranteed salary paid to Erdman was payment for labor itself. Conversely, the nonguaranteed commission Erdman had the opportunity to earn was payment for the results or fruit of his labor. Just as in *Saunders*, the majority here feels that the manner in which the compensation is paid is crucial.

Because the legislature could have specifically defined "wages" to include all commissions if it had so intended, because holding that commissions given over and above a salary are subject to sec. 103.445, Stats., would give rise to levels of regulation that the legislature did not intend, and because the common understanding of the word "wages" at the time sec. 103.455 was enacted did not contemplate managers' bonuses and commissions as part of "wages," we resolve the ambiguity by concluding that commissions received over and above a salary are not included as "wages" under sec. 103.455. We therefore affirm the order of the trial court.

*By the Court.*—Judgment affirmed.

MYSE, J. (*dissenting*). I dissent from the majority's conclusion that the term "wages" as used in sec. 103.455, Stats., does not encompass compensation received in the form of commissions. While the majority properly notes that this is a remedial statute that should be interpreted broadly, they do not give it such an interpretation. I am unpersuaded by the majority's reasons for concluding that the legislature did not intend to include commissions in its proscription against unilateral deductions by the employer from wages for faulty workmanship, loss, theft or damage. I reach the opposite conclusion for a variety of reasons.

First, I conclude that a broad interpretation of the term "wages" is appropriate. The legislature enacted sec. 103.445, Stats., to prohibit an employer from arbitrarily determining that it does not owe the employe compensation because it attributes losses to the employe's deficient performance. *Donovan v. Schlesner*, 72 Wis. 2d 74, 81, 240 N.W.2d 135, 139 (1976). The statute authorizes deductions only if it is determined after the loss that the loss resulted from the employe's negligence or intentional conduct. *Id.* Nothing in the statute indicates that income in any form is not entitled to this statutory protection. A significant segment of this state's population would be deprived of this protection if commissions were excluded from this legislatively created shield. The manner in which the income is calculated is irrelevant to the legislative purpose of this statute.

Second, I do not agree with the majority's conclusion that an individual receiving both a salary and commissions is not susceptible to the economic hardships resulting from an employer's arbitrary deduction that the legislature intended to prevent when it passed this statute. An employe earning commissions above a base salary at minimum wage levels is every bit as susceptible to the economic pressure from an employer's overreaching as an individual who is entirely dependent upon a salary for compensation.

Third, although the term "wages" is not expressly defined in ch. 103, Stats., an examination of related definitions in sec. 103.49 is instructive. Subsection (1)(b) defines "hourly basic rate" as "the hourly wage paid to any employe, *excluding* any contributions or payments for health and welfare benefits, vacation benefits, pension benefits and *any other economic benefits,* whether paid directly or indirectly." (Emphasis added.) Subsection (1)(d) defines "prevailing wage rate" as "the hourly

basic rate paid plus the hourly contribution for health and welfare benefits, vacation benefits, pension benefits *and any other economic benefit,* whether paid directly or indirectly . . .." (Emphasis added.) Because these definitions include other economic benefits, I conclude that the legislature contemplated a broader definition of the term "wages" than the hourly rate or base salary paid to an employe.

Finally, I note that the definition of "wages" contained in sec. 109.01(3), Stats., specifically includes commissions. While this section was not in effect at the time the legislature adopted the protections in sec. 103.455, Stats., it was in effect in 1989 when the legislature last modified sec. 103.455. When the legislature enacts or amends a statute, it is presumed to have full knowledge of existing statutes. *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 646, 436 N.W.2d 594, 597 (1989).

In 1975, the legislature repealed sec. 101.21, Stats., and created sec. 109.01, Stats. When the legislature modified most of ch. 103, Stats., including sec. 103.455 in 1989, it is presumed to have known that sec. 109.01(3) contained a definition of "wages" that included commissions. Had the legislature intended a narrower definition of the term "wages" for purposes of applying sec. 103.455, it would have included such a definition in the revised ch. 103. In addition, the Legislative Reference Bureau's drafting division cross-referenced the definition of "wages" in sec. 109.01 in the notes following sec. 103.455. The cross-references are a part of the bill or amendment that the legislature considers before enacting or modifying a statute. The cross-references are considered along with the language of the bill. Cross-referencing definitions in other statutes is designed to eliminate confusion and the need for repetitious definitions of words that are used in many different statutes.

That the legislature declined to create a narrower definition of "wages" for the purpose of applying sec. 103.455 but instead cross-referenced the existing definition in sec. 109.01 is significant in determining its intent.

The majority relies heavily on the language preceding the definitions in sec. 109.01, Stats., "as used in this chapter." This language does not necessarily exclude the application of these definitions to other chapters. If the legislature had intended the definitions to apply only to ch. 109, it could have expressly indicated that intention when it enacted sec. 109.01 or when it revised that section in 1989. Likewise, the legislature could have objected to cross-referencing sec. 109.01 when it modified sec. 103.455, Stats., later in 1989. The legislature's continued use, without limitation or qualification, of the term as previously defined implies it intended the term to have the same meaning in both chapters. This is true whether the legislature is enacting new legislation or revising existing legislation because it is presumed to have knowledge of its previous statutory definitions. *Wood*, 148 Wis. 2d at 646, 436 N.W.2d at 597. For the above reasons, I conclude that commissions are "wages" entitled to protection under sec. 103.455.

Because this conclusion is not dispositive of the appeal, I must also address the issue whether the statute of limitations bars Erdman's claim for commissions. I conclude that the six-year statute of limitations in sec. 893.43, Stats., and not the two-year statute of limitations in sec. 893.44 applies to Erdman's claims for the following reasons.

Section 893.44, Stats., provides, "Any action to recover unpaid salary, wages or other compensation *for personal services*, except actions to recover fees for professional services, . . . shall be commenced within 2 years after the cause of action accrues or be barred." (Empha-

sis added.) This two-year statute of limitations is an exception to the general six-year statute of limitations for contract actions. *Saunders,* 85 Wis. 2d at 74, 270 N.W.2d at 177.

In *Saunders,* our supreme court stated that the determination of whether the two-year statute of limitations for claims for unpaid compensation for personal services applies depends on whether the object of the compensation is human labor itself or whether the object of the compensation is to secure a particular end result of human labor. *Id.* at 74-75, 270 N.W.2d at 177-78. If the payment and amount of compensation are dependent on the hours or amount of labor the employe expends, the object of the compensation is human labor and the two-year statute of limitations applies. *Id.* at 74-75, 270 N.W.2d at 178. In contrast, if the payment and amount of compensation depend on achievement of a result, irrespective of the hours or amount of labor the employe expends to achieve the result, compensation is not for personal services and the general six-year statute of limitations for contract actions applies. *Id.* Our supreme court has consistently followed this narrow construction of sec. 893.44, Stats., since 1956. *See, e.g., Dunbar v. Brunstad,* 273 Wis. 479, 480, 78 N.W.2d 878, 879 (1956); *Cordova v. Gutierrez,* 23 Wis. 2d 598, 604, 128 N.W.2d 62, 65 (1964); *Saunders,* 85 Wis. 2d at 75, 270 N.W.2d at 178 (citing other prior cases applying this construction).

Here, as in *Saunders,* the payment and amount of commissions were not based upon hours worked or effort expended by Erdman. Instead, Erdman's commissions were based on the amount of petroleum and merchandise sales each month. He was to receive a commission of a percent of sales made, irrespective of the time he spent or labor he extended at the gas station/convenience

store. I therefore conclude that the portion of Erdman's employment contract providing for payment of commissions was not a contract for Erdman's personal services and, consequently, Erdman's claim for unpaid commissions is subject to the six-year statute of limitations for contract actions in sec. 893.43, Stats.

An examination of the two statutes demonstrates that this construction of sec. 893.44, Stats., is consistent with the construction of the term "wages" as used in sec. 103.455, Stats. Section 103.455 applies to "wages," irrespective of how they are earned or calculated. The statute of limitations, however, requires an examination of the basis upon which the income is calculated. Section 893.44, by its terms, applies only to wages calculated based on the employe's provision of personal services. Further, as a remedial statute, sec. 103.455 is broadly construed; in contrast, as a restrictive exception to a general statute of limitations, sec. 893.44 is construed narrowly. *Saunders*, 85 Wis. 2d at 73-74, 270 N.W.2d at 177.