DONOVAN, by his statutory trustee, STATE OF WISCONSIN, DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Appellant, v. SCHLESNER, d/b/a CLARK GAS, Respondent.

*No. 563 (1974). Submitted on briefs March 4, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 135.)

For the appellant there was a brief by *Robert W. Warren*, attorney general, and *Charles D. Hoornstra*, assistant attorney general.

BEILFUSS, J.   The defendant-respondent, Larry Schlesner, doing business as Clark Gas, has not filed a brief or otherwise appeared in this appeal. The judgment could be reversed as a matter of course under the Supreme Court Rule, sec. 251.57, Stats. However, because the case is to be remanded for further proceedings, we deem it advisable to set forth our opinion.

The sole issue presented is whether sec. 103.455, Stats., was complied with in making deductions from the weekly wages of the plaintiff.

On or about June 8, 1972, the plaintiff, Terry Donovan, then seventeen years old, applied for a job as an attendant at a gas station in Watertown. The station was operated by the defendant, Larry Schlesner. Donovan completed a job application form and was told by Schlesner that he had the job and could start the next day. There was no written contract of employment.

Donovan's duties at the station included pumping gas, keeping the station clean, washing windows, and taking care of customers. In addition, Donovan was required to keep the books to reflect the sale of such items as gas, milk and candy during his working shift. His compensation was increased as he learned how to keep the books. At the time his employment was terminated on September 25, 1972, Donovan was earning $1.85 per hour. Payment was by check each Friday for the work done that week.

When Donovan first started work he was told by Schlesner that deductions would be made from the week's pay for shortages appearing from the books. Shortages were determined by comparing the property or items on hand with the amounts entered into the books representing sales. The deductions were noted on the check stubs given to the employee with the paycheck. Donovan's check stubs revealed that a total of $116.60 was deducted from his weekly checks in amounts ranging from $2 to $24.65 during the period he worked for Schlesner.

Donovan stated that he did not object to the deductions when made because he needed the money from the job. He did, however, understand why they were being made. Donovan did not specifically agree to each deduction and did not feel responsible for the shortages reflected by them.

A rubber stamp impression on the back of his job application provided:

"I will be responsible for all shortages
shown on shift sheet.
"Date 6/6–72, Time 5:00
"Name Terry Donovan"

Donovan stated that the stamp was not on the application form at the time he applied for the job. He testified he signed this provision about three weeks before his employment was terminated and that he had not authorized each deduction in writing.

Donovan worked through September 25, 1972. He was fired the next day for failing to do the books the night before. He stated he did not do the books because he was angry after Schlesner asked him when he would learn to do them properly. Schlesner never accused Donovan of dishonesty or theft and Donovan stated he never took anything without paying for it.

After he was fired, Donovan did not talk to Schlesner about the deductions. He did go to the unemployment office where he was told to write a letter to the Department of Industry, Labor & Human Relations setting forth the facts concerning the deductions. The department sent a form for Donovan to complete and commenced this action on his behalf.

Following the presentation of the plaintiff's evidence, counsel for the defendant moved for dismissal on the ground that Donovan had acquiesced in the deductions by failing to object thereto. The county court, in a decision from the bench, granted the motion on the ground that the plaintiff "knew each week what was being taken out, why it was being taken out, what they were for, and he never said one word, even at the end when he left, he never said one word." The plaintiff appealed the order dismissing the action to the circuit court. That court wrote a memorandum decision and issued a judgment affirming the county court's order. The state of Wis-

consin, Department of Industry, Labor & Human Relations brings this appeal as Donovan's statutory trustee pursuant to secs. 101.21 and 101.02 (5) (f), Stats.

Sec. 103.455, Stats., provides:

"**Deductions for faulty workmanship, loss, theft or damage.** No employer shall make any deduction from the wages due or earned by any employe, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction or unless the employer and a representative designated by the employe shall determine that such defective or faulty work, loss or theft, or damage is due to worker's negligence, carelessness, or wilful and intentional conduct on the part of such employe, or unless the employe is found guilty or held liable in a court of competent jurisdiction by reason thereof. If any such deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by said employe. Any agreement entered into between employer and employe contrary to this section shall be void and of no force and effect. In case of a disagreement between the two parties, the department shall be the third determining party subject to any appeal to the court."

The department contends that this section requires that a determination of employee fault must precede each deduction for loss by the employer. This determination, the department asserts, may be made in one of three ways under the statute: (1) A written employee admission of the fault; (2) an agreement by the employee's representative that the employee was at fault; or (3) a court determination of fault. Unless such a determination precedes each deduction, the department argues, that deduction is unlawful and the employer is liable for the penalty imposed by the statute.

Primary reliance is placed upon *Zarnott v. Timken-Detroit Axle Co.* (1944), 244 Wis. 596, 13 N. W. 2d 53.

That case involved a complaint by the plaintiff, in his own behalf and on behalf of other employees similarly situated, against the employer to recover payroll deductions made in violation of sec. 103.455, Stats. The plaintiffs were machine operators paid on a piecework basis with a guaranteed minimum hourly rate. Each day they were given a job card which showed the part to be manufactured, the machine to be used, the piece rate and a description of the operation. At the end of the day the employee turned in his card and finished pieces. The pieces were inspected and, if any were rejected as defective, the foreman determined whether the defect was due to the carelessness of the employee. Deductions were made from each employee's paycheck for the defective pieces attributed to his carelessness.

The employer, on appeal from a judgment for the plaintiffs, argued that no compensation was due to an employee for defective pieces caused by his negligence and that, as a result, no wages were "due or earned" within the meaning of sec. 103.455, Stats. In response to that argument, this court stated at pages 600, 601:

"Respondents seek to recover for deductions made from their wages for faulty and defective work without a mutual determination that the defective pieces were the result of the employees' carelessness, negligence, or wilful misconduct, as required by statute. The purpose of this statute was to require the employer to give the employee an opportunity to protect his rights on the question of whether defective parts were due to his negligence. The earnings of the employee depend upon his services properly rendered. It is considered that the purpose of the statute is to prohibit an arbitrary determination by the employer that no compensation is due the employee by reason of defective work due to his negligence. What appellant attempts to do is to select two or three words and separate them from the section and thus reach the conclusion that appellant does not come under the statute. To approve this contention would leave the statute with no meaning. . . The statute must be read in its entirety

in order to determine what is meant by 'wages due and earned.' When an employee has completed his work on a piece he is entitled to his wages, and this can only be denied to him when it is defective by reason of his negligence, carelessness, or wilful and intentional misconduct and under this statute it is necessary for the employer to give the employee, or his designated representative, an opportunity to establish that the defect was not due to any fault of his. In the event that he is not given this opportunity the employer is liable for twice the amount to which the employee would be entitled. . . To say that the wages were not due and earned when an employee has completed his labor would be to wholly disregard the intention of the legislature in the passage of this statute."

*Zarnott, supra,* clearly supports the department's position. Under the rationale of that case Donovan was entitled to his wages when he had completed the hours he was assigned to work. There could be no deduction from those wages for alleged shortages on the books until a determination was made, pursuant to the statute, that those shortages were due to Donovan's negligence, carelessness or wilful and intentional misconduct. Donovan must have been given the opportunity to show that the losses were not due to any fault of his own.

In dismissing the action the county court held that Donovan, by not objecting to the deductions when made and continuing to work knowing why they were made, acquiesced in Schlesner's conduct and should not now be heard to contend that the deductions were unlawful. The county court did not refer to sec. 103.455, Stats., in making that decision. It is clear that acquiescence is not a substitute for the determination of fault required by the statute. As the department points out, the statute's protection is most needed by those who are unaware of their right to a fault determination.

The statute authorizes deductions for losses only after it is determined that the losses were due to the employee's fault in the manner provided for by the

statute. There is no evidence of such a determination here. The fact that Donovan was told at the time he was hired that the deductions would be made does not comply with the statute. The consent of the employee may only serve as a basis for a deduction where it is given in writing after the loss and before the deduction. Donovan admitted that he signed a deduction clause on the back of his application form about three weeks before his employment was terminated. That clause purported to authorize deductions for losses shown on the employee's shift sheet. However, such blanket authorizations are not contemplated by the statute as it is construed in *Zarnott*. The purpose of the statute, as this court noted in that case, is to prohibit an arbitrary determination by an employer that compensation is not due the employee by reason of losses attributed to his negligence. That purpose can be achieved only by giving the employee an opportunity to establish his lack of fault before the deduction is made. Agreements between the employer and employee which are contrary to this objective are expressly rendered void and of no effect.

The circuit court, on reviewing the county court's order, concluded that there had been no prior determination of fault according to the methods provided in the statute. However, it held that the order would be sustained if the evidence supported a finding that Donovan was, in fact, at fault with respect to the shortages in question. The court noted that the county court had made no specific finding in this regard. It nevertheless undertook an independent review of the record and determined that it supported an inference that the goods were lost and missing while Donovan was on duty. The court then held that Donovan was a bailee of the lost goods and that a presumption of negligence on his part arose from the inference that the bailed property was lost or damaged while in his possession. Accordingly, the county court's order was affirmed.

On appeal the department argues that Donovan was not a bailee, but an employee and his fault cannot be asserted as a defense to an action to recover deductions unlawfully made under sec. 103.455, Stats. It contends that unless the fault determination precedes the deduction the purpose of the statute is defeated. We agree that this position is correct. Allowing the fault determination to be made as a matter of defense in the employee's action to recover the amounts deducted effectively removes the protection sought to be afforded by the statute. The entire purpose of the statute is to preclude any deduction for losses until the employee has an opportunity to show his lack of fault. An employer is not prohibited under the statute from deducting from an employee's wages those losses in business which are due to his negligence, carelessness, or wilful misconduct. However, he may do so only in accord with one of the methods provided by the statute which are designed to protect the employee from arbitrary action.

This court in *Zarnott, supra,* held that sec. 103.455, Stats., "gives to the employee the right to recover in a civil action from the employer twice the amount of the deduction or credit taken, if the terms of this statute have not been complied with. The statute is very plain and does not depend upon implication, and its application is not unreasonable or oppressive." *Zarnott* was approved in *Peters v. International Harvester Co.* (1946), 248 Wis. 451, 22 N. W. 2d 518, where a complaint alleging that the employer had made deductions from wages for alleged defective workmanship without written authorization from the employee and without any meeting or conference between the employer and a representative of the employee was held to state a cause of action. The court stated at page 453: "If the deduction was in violation of the statute each of the named plaintiffs is entitled to recover twice the amount of his deduction."

We believe a bailor-bailee relationship did not exist between Donovan and Schlesner. Their relationship was that of master-servant. The distinction is set forth in 8 C. J. S., *Bailments*, p. 348, sec. 5:

"While a bailee has possession and control of the property, a servant has only custody, possession and control remaining in the master; further, a servant, unlike a bailee is under the orders and control of the owner of the property."

Donovan was subject to Schlesner's orders. He could not exclude Schlesner from possession of the goods held for sale at the gas station; he had mere custody of those goods while on duty. Accordingly, no presumption of negligence could arise from the shortages in question.[1] Donovan was an employee and entitled to the protection of the statute.

The case ended in the county court with the defendant's motion to dismiss at the end of the plaintiff's case-in-chief. The defendant should have the opportunity to prove that there was a determination of fault as required by the statute before the deductions were made. The judgment of the circuit court must be reversed, and the county court's order dismissing the plaintiff's action set aside with instructions to proceed on the merits of Donovan's claim under sec. 103.455, Stats., with the defendant being afforded the right to prove a defense if he can.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

---

[1] *See:* 53 Am. Jur. 2d, *Master and Servant,* p. 178, sec. 108.