Robert D. ERDMAN, Plaintiff-Appellant-Cross Respondent-Petitioner,

v.

JOVOCO, INC., A Foreign Corporation, Defendant-Respondent,

CROWN COCO, INC., A Foreign Corporation, Defendant-Respondent-Cross Appellant.

Supreme Court

*No. 92–0980. Oral argument November 1, 1993.—Decided March 3, 1994.*

(Also reported in 512 N.W.2d 487.)

For the plaintiff-appellant-cross respondent-petitioner there were briefs by *Stuart J. Krueger* and *Bye, Krueger & Goff, S.C.,* River Falls, and oral argument by *Stuart J. Krueger.*

For the defendant-respondent there was a brief by *William G. Thiel* and *Weld, Riley, Prenn & Ricci, S.C.,* Eau Claire and oral argument by *William G. Thiel.*

For the defendant-respondent-cross appellant there was a brief by *James T. Remington* and *Remington Law Offices,* New Richmond and oral argument by *James T. Remington.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Erdman v. Jovoco, Inc.,* 173 Wis. 2d 273, 496 N.W.2d 183 (1992), affirming the judgments of the circuit court of Rusk County, Frederick A. Henderson, circuit judge, dismissing the actions.

The plaintiff, Robert Erdman, commenced an action against Jovoco, Inc., in May 1990 and against Crown Coco., Inc., in February 1991, claiming that these companies, his former employers, made deductions from his commission earnings in violation of sec. 103.455, Stats. 1991–92. Section 103.455 provides in part that "no employer shall make any deduction from the *wages* due or earned by any employe . . . for defec-

tive or faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction . . .." (emphasis added).[1] After the plaintiff presented his case the circuit court granted the defendants' motion to dismiss the cause on the grounds that sec. 103.455 is limited to compensation received in the form of *wages* and is not applicable to compensation received in the form of *commissions*. The court of appeals affirmed the dismissal.

The primary question presented to the circuit court, the court of appeals, and this court is whether compensation to an employe in the form of commissions constitutes "wages" within the meaning of sec. 103.455, which prohibits an employer from making certain deductions from an employe's wages. The meaning

---

[1] Section 103.455, **Deductions for faulty workmanship, loss, theft or damage.**

No employer shall make any deduction from the *wages* due or earned by any employe, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction or unless the employer and a representative designated by the employe shall determine that such defective or faulty work, loss or theft, or damage is due to worker's negligence, carelessness, or wilful and intentional conduct on the part of such employe, or unless the employe is found guilty or held liable in a court of competent jurisdiction by reason thereof. If any such deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by said employe. Any agreement entered into between employer and employe contrary to this section shall be void and of no force and effect. In case of a disagreement between the 2 parties, the department shall be the 3rd determining party subject to any appeal to the court. Subject 111.322(2m) applies to discharge and other discriminatory acts arising in connection with any proceeding to recover a deduction under this section. (Emphasis added.)

743

of "wages" in sec. 103.455 is a question of law of first impression. We conclude that sec. 103.455 applies to compensation in the form of commissions because the legislature intended the word "wages" to be given its ordinary meaning in everyday parlance, which encompasses a variety of forms of employe remuneration.

Because we conclude that sec. 103.455 applies to compensation in the form of commissions, we must address three additional issues: 1) whether the plaintiff's claim is barred by the statute of limitations;[2] 2) whether sec. 103.455 requires the plaintiff to exhaust administrative remedies by bringing his claim before the Department of Industry, Labor and Human Relations prior to initiating these court actions against his employers; and 3) whether the employers complied with the requirements in sec. 103.455 in making the deductions.

We conclude 1) that the applicable statute of limitations is sec. 893.43, Stats. 1991–92, which provides a six-year limitation on contract claims; 2) that the plaintiff was not required to exhaust administrative remedies; and 3) that the employers did not comply with the requirements of sec. 103.455. Accordingly, we reverse the decision of the court of appeals and the judgment of the circuit court and remand the case.

I.

The plaintiff was the manager of a 24-hour gas station and convenience store in Ladysmith, Wisconsin. He was initially hired by defendant Crown Coco,

---

[2] The plaintiff has only claimed damages for the last four years of his employment because of his understanding that he is subject to a six-year statute of limitations. The defendants argue, as we shall discuss later, that the plaintiff's claim is governed by a two-year statute of limitations.

Inc. in the fall of 1983 and worked until July 1986, when the store was sold to defendant Jovoco, Inc. He continued working for Jovoco until December 1989.

The change of ownership did not affect the plaintiff's position as the store manager nor did it alter the terms of his employment. As store manager he was responsible for the daily operation of the store, hiring and firing employes, bookkeeping, tending to inventory, and operating the cash register during the hours he was on duty. He worked approximately 49 hours per week.

Defendant Crown Coco compensated its store managers using two components. This method of compensation was later adopted by defendant Jovoco when it purchased the store. Store managers were paid a fixed sum and were also eligible to receive a commission based on a percentage of the store's monthly gross sales of merchandise and gasoline. When the plaintiff began his employment with Crown Coco, he signed a Statement of Policy agreeing to the company's policy regarding commissions. The company policy allowed the employer to make deductions from an employe's commissions for such items as merchandise and cash shortages, returned checks, credit card charges which were accepted in violation of company policies, and damaged or returned videos.[3] The company policy

---

[3] The company policy on commissions read as follows:

2. COMMISSIONS

a. To become eligible for the commission program, each manager must complete 90 days beginning with the first full month of employment as manager.

b. All commissions are based on petroleum gallonage plus merchandise sales.

c. All cash and merchandise shortages during each month will be deducted from these gross earnings.

expressly stated that no deductions would be made from the "manager's salary."[4]

The company determined the amount to be deducted from the plaintiff's commissions through a monthly or bimonthly audit performed by another company employe. The auditor would compare her findings with the sales records kept by the plaintiff; any shortages of merchandise or cash, or damaged goods would be deducted from the plaintiff's commission. The

d. Excess hours over budget (other than managers) will be deducted from your commission at the current minimum hourly rate.

e. Deductions will be made for all out of policy checks as well as all out of policy credit cards returned. . . .

f. Other deductions for commissions could include missing supplies, equipment, etc., uncontrollable budgets including store utilities, etc.

g. Any shortages in excess of commission earnings will be carried forward to the following month.

h. Commissions, if earned are presented to each manager on a monthly basis. . . .

[4] The company policy statement the plaintiff signed stated: "If there is a cash or merchandise shortage at a station store, it may be deducted from the manager's commission or bonus, but in no event can it be taken from the manager's salary or any other employee's pay at the station store." The plaintiff also signed the following statement:

IF EMPLOYED, I HEREBY AGREE TO THE FOLLOWING CONDITIONS OF EMPLOYMENT.

1. I have read the attached "Statement of Policy" and agree to be bound by it.

2. I agree to follow all credit card, check cashing, and account receivable procedures as described by my employers and agree to be responsible for any infractions of these procedures.

I HAVE READ THE ABOVE AND UNDERSTAND THE CONDITIONS OF EMPLOYMENT.

plaintiff was given an opportunity to correct the accuracy of the auditor's findings (*e.g.* he could alert the auditor to inventory which she had overlooked during the audit), but he was not given the opportunity to contest his liability for shortages or damaged goods.

Deductions from the plaintiff's commission were made for certain incidents whether or not he was present in the store. As the store manager he was held financially responsible for any returned checks or credit card charges which were accepted in violation of company policies, regardless of whether he was present in the store to approve the transactions. He was also required to compensate the company for any stolen gas or merchandise, regardless of whether he was on duty or whether he was capable of preventing the theft. He was held responsible for shoplifted merchandise as well as large scale thefts. In one instance, deductions were made from the plaintiff's commissions for the theft of inventory which his employer had instructed him to store outside the store. The plaintiff testified that he repeatedly complained to his employer that the inventory was not secure if it was displayed outside 24 hours a day, but the store refused to expend the money for additional security or storage space.

While the plaintiff worked for Crown Coco, he received his compensation in two separate checks, one in a fixed amount and one for his commissions. Jovoco combined his salary and commissions and paid him his full compensation in one check. Both employers accompanied his payment with a reconciliation sheet noting the amounts deducted and the reasons for the deductions. Deductions were made from the plaintiff's commissions nearly every month of his tenure as the store manager.

The deductions made from the plaintiff's commissions never affected the fixed amount of compensation. If the deductions exceeded the commissions for a given period, he would not receive any commissions but would still be paid the fixed amount of compensation. Any deficit would carry over to the next period's calculation of the commissions. The plaintiff was not held responsible for any deficit at termination of employment.

The plaintiff initiated his actions pursuant to sec. 103.455, Stats. 1991–92, seeking to recover double the deductions which were made from February 1985 through December 1989, plus the 5% statutory interest rate. He calculated that $7,906.68 was deducted by Crown Coco from February 1985 to August 1986, and $19,581.33 was deducted by Jovoco from August 1986 until December 1989.

II.

■

The primary issue presented in this case is one of statutory interpretation. We must determine whether commissions constitute "wages" within the meaning of sec. 103.455. The statute provides, as we have stated, that "no employer shall make any deduction from the *wages* due or earned by any employe, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property. . . ." Section 103.455. The interpretation of this statute is a question of law which this court determines independently of the other courts.

■

The principal objective of statutory interpretation is to ascertain and give effect to the intent of the legis-

lature. *Green Bay Development Authority v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984).
■

The first step is to examine the statutory language. There is no definition of "wages" as used in sec. 103.455 either in the section itself, in ch. 103, or in the cases. The plaintiff argues that "wages" is a general term encompassing various forms of employe compensation, including commissions. This broad definition comports with some dictionary definitions[5] and with some statutory definitions of wages.[6] The defendants,

---

[5] Webster's Third New International Dictionary defines wage as "a pledge or payment of usu. monetary remuneration by an employer esp. for labor or services usu. according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits."

Black's Law Dictionary (6th ed. 1990), citing *Ernst v. Industrial Commission,* 246 Wis. 205, 16 N.W.2d 867 (1944), defines wages as "[e]very form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips and any other similar advantages received from the individual's employer or directly with respect to work for him."

[6] Section 71.63. **Definitions.**

**(6)** "Wages" means all remuneration, other than fees paid to a public official, for services performed by an employe for an employer, including cash value of all remuneration paid in any medium other than cash . . . ..

Section 104.01. **Definitions.**

**(8)** The term "wage" or and the term "wages" shall each mean any compensation for labor measured by time, piece or otherwise.

Section 108.02. **Definitions.**

**(26)** Wages

---

also referring to a dictionary definition, argue that the word "wages" is limited to payment made on a contractual, hourly, daily, or piecework basis.[7]

The court of appeals concluded, and we agree, that reasonable persons could unearth a plethora of different definitions for the word "wages." As the court of appeals suggested, "wages" could be an employe's base salary, compensation given only for manual labor, compensation to employes in nonmanagement positions, or compensation paid for human labor itself but not compensation paid as commission for the end product.

(a) Unless the department otherwise specifies by rule, "wages" means all remuneration for employment, including the cash value of all remuneration, including benefits paid in any medium other than cash . . ..

Section 109.01. **Definitions.**

(3) "Wage" or "wages" mean remuneration payable to an employe for personal services, including salaries, *commissions,* holiday and vacation pay, overtime pay . . ..

Judge Myse's dissent looked to the definition of "wages" in sec. 109.01(3), Stats. 1991–92, which specifically includes commissions, as another indication that the legislature intended sec. 103.455 to apply to commissions. He concluded that the legislature implicitly adopted this broad definition of "wages" for use in sec. 103.455 when it amended sec. 103.455 in 1989. *Erdman,* 173 Wis. 2d at 286–87.

[7] The defendants cite the definition of wage from Webster's New Collegiate Dictionary (1977) for this narrow interpretation of the term.

*In re Reibs,* 8 Wis. 2d 110, 114, 98 N.W.2d 453 (1959), the court defined wages for purposes of another provision in ch. 103 as money paid to an employe for manual or physical work done usually on an hourly, daily or piecework basis, as distinguished from salary which is a fixed payment at regular intervals for services.

750

*Erdman v. Jovoco,* 173 Wis. 2d 273, 279, 496 N.W.2d 183 (1992). We must therefore look to the history of the statute and the objective to be accomplished to determine the meaning of "wages." *Green Bay Development Authority v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984).

Section 103.455 was proposed by the Wisconsin Federation of Labor and enacted in 1931. Ch. 457, Laws of 1931. "Wages" was used in the original draft and has not been altered during the 62-year history of the statute. The legislative history of the statute does not include an express statement of the legislature's purpose, but its sponsorship by the Wisconsin Federation of Labor and its enactment during the depression strongly suggest that it was intended to protect employes. While the Federation might have been interested primarily in protecting its members, the language is not limited to particular kinds of employes,[8] although the original version of the statute was limited to proscribing unilateral deductions by employers for faulty workmanship. The addition of prohibitions against unilateral deductions for lost or stolen property in 1943 expanded the scope of the statute beyond the manufacturing context.

Wisconsin courts have not been asked to construe the meaning of "wages" within sec. 103.455, but the case law does help explain the purpose of the statute. In *Wandry v. Bull's Eye Credit,* 129 Wis. 2d 37, 384 N.W.2d 325 (1986), this court described the legislative policy underlying sec. 103.455, stating as follows: "Sec-

[8] The court of appeals concludes that construing wages broadly would give rise to levels of regulation that the legislature did not intend. We can find nothing in the history of the legislation about the levels of regulation the legislature intended.

751

tion 103.455 is aimed at preventing employers from using coercive economic power to shift the burden of a work related loss from the employer to the employe . . . ." *Wandry,* 129 Wis. 2d at 45. Section 103.455 does not preclude an employer from shifting costs to the employe, but it does protect against "an arbitrary determination by an employer that compensation is not due the employe by reason of losses attributed to [the employe's] negligence." *Donovan v. Schlesner,* 72 Wis. 2d 74, 81, 240 N.W.2d 135 (1976). See also *Wandry,* 129 Wis. 2d at 44.

██

The legislative history and case law surrounding sec. 103.455 make it clear that the legislature intended to ensure that employes would not unfairly bear the employer's costs of operating a business. Nothing indicates that the legislature intended the statute to apply only to employes who are paid on a contractual, hourly, daily or piecework basis, as argued by the defendants. Rather an examination of the statute as a whole suggests that the legislature intended sec. 103.455 to be broadly applicable.[9] The legislature used the term "any employe" and provided an exemption from the statute only for independent contractors.

The earliest case applying sec. 103.455 offers further support that the legislature intended sec. 103.455 to apply to all employes, regardless of the manner in which they received compensation. In *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 13 N.W.2d 53 (1944), this court held that an employer violated sec. 103.455 by making deductions from a machine opera-

---

[9] In *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 13 N.W.2d 53 (1944), the court noted that in interpreting the phrase "wages due and earned" in sec. 103.455, "the statute must be read in its entirety . . . ." *Zarnott,* 244 Wis. at 601.

tor's earnings based on the unilateral determination by a foreman that certain pieces manufactured by the employe were defective and that the defects were the result of the employe's negligence. *Zarnott,* 244 Wis. at 598. The machine operator was paid on a piecework basis, but he was also guaranteed a minimum hourly rate. *Id.* The employer claimed that the employe only earned payment for piecework after the pieces were approved by the foreman. Thus, the employer argued, the deductions were valid because they were not made from "wages due and earned" as required by the statute. *Id.* at 601. The court rejected this argument, holding that the employe's wages were earned at the time the piecework was completed and that the employer could not make deductions for faulty work without following the procedures set forth in sec. 103.455. *Id.*

The two-component method of compensation used by the defendants in the present case is analogous to the method of compensation used in *Zarnott.* Both the plaintiff in the case at bar and the machine operator in *Zarnott* received one portion of compensation which was guaranteed and an additional portion of compensation based on job performance. The employe in *Zarnott* earned the additional portion of compensation upon completion of each piece. In this case, the plaintiff's earnings increased as the sales were completed. The employe in *Zarnott* was rewarded based on his productivity, while the plaintiff in this case was rewarded for running a profitable store with a high volume of sales. The fact that the plaintiff was a supervisor, while the machine operator in *Zarnott* was not in a supervisory position, does not appear relevant for the purposes of sec. 103.455. The statute is designed to curtail the coercive economic power of an employer to

shift the burden of work-related loss from the employer to the employe. Because both the plaintiff and the machine operator were employes who were not given an opportunity by their employers to accept or contest deductions made from their earnings, both are protected by the statute.

Although the court of appeals found that sec. 103.455 was a remedial statute which should be construed broadly,[10] it concluded that the statute was not applicable to the plaintiff's commissions. *Erdman,* 173 Wis. 2d at 281. The court of appeals believed that the plaintiff's receipt of fixed compensation guaranteed him fair compensation. This belief is crucial to the court of appeals' determination that commissions are not "wages."

We disagree with the court of appeals' interpretation of the purpose of sec. 103.455 and its reading of *Zarnott.* Section 103.455 was not intended to operate as a minimum wage law or as a law guaranteeing that total compensation would be fair compensation for the work done. Rather it was intended to protect employes from arbitrary assumptions that faulty work, or lost, stolen or damaged property are attributable to their own deficient performance. Thus, the statute requires employers to provide employes with an opportunity to contest deductions made on the basis of such assumptions. The manner in which the income is calculated is irrelevant to the legislative purpose. We conclude, as did court of appeals Judge Myse in his dissenting opinion, that a broad interpretation of the word "wages" is

---

[10] Citing *In re: I.V.,* 109 Wis. 2d 407, 411, 326 N.W.2d 127 (Ct. App. 1982), the court of appeals concluded that because this statute seeks to remedy a wrong to an individual, it is remedial; a statute is penal if it undertakes to redress a wrong to the public.

therefore appropriate. An employe earning commissions is as susceptible to the economic hardships resulting from arbitrary deductions as is an employe with a fixed amount of compensation.

In addition, the court of appeals' formalistic view of "wages" as fixed compensation is problematic; the court of appeals' reliance on *Zarnott* is misplaced. In its reading of *Zarnott,* the court of appeals emphasized that the machine operator's entire earnings were subject to deductions because his piecework earnings and hourly pay were combined in his paycheck. Thus, the court of appeals explained, *Zarnott* was distinguishable from the present case because the employer in *Zarnott* could have made deductions from the employe's entire earnings, whereas the plaintiff's employers made no deductions from the fixed amount of his compensation. *Id.* at 280.

The court of appeals has misconstrued the facts of *Zarnott.* The machine operator was guaranteed a minimum payment based on the number of hours worked; therefore his earnings could not be reduced below a certain level. *Zarnott,* 244 Wis. at 598. The decision in *Zarnott* turned on whether the unilateral deductions were made from compensation "due and earned" by the machine operator, not on the manner in which the employe was paid. *Id.* at 601.

Under the narrow interpretation of sec. 103.455 offered by the court of appeals, employers could circumvent the statute by paying employes a portion of their earnings at a flat rate and the remainder on a different basis. Such compensation schemes would allow employers to make significant unilateral deductions from the earnings of their employes.

An examination of statutory provisions similar to sec. 103.455 in other jurisdictions adds support to our

conclusion that sec. 103.455 is applicable to the plaintiff's commission. Although statutory schemes vary in the kinds of deductions they prohibit and in the process employers must follow prior to making deductions, all share the common purpose of preventing employers from unfairly shifting business losses to employes. Some states refer to the employe's pay as "compensation"[11] rather than "wages", *see e.g.,* Haw. Rev. Stat. sec. 388–6 (1991); some define "wages" to include commissions, *see, e.g.,* Iowa Code sec. 91A.5 (1991); Iowa Code sec. 91A.2 (1991);[12] Ky. Rev. Stat. Ann. sec.

---

[11] Haw. Rev. Stat. sec. 388–6 (1991) **Withholding of wages.**

No employer may deduct, retain, or otherwise require to be paid, any part or portion of any *compensation* earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee, provided that the following may not be so authorized, or required to be borne by the employee:

. . .

5. Losses due to defective or faulty workmanship, lost or stolen property, damage to property, default of customer credit, or nonpayment for goods or services received by customer if such losses are not attributable to employee's wilful or intentional disregard of employer's interest . . . (emphasis added).

[12] Iowa Code sec. 91A.5 (1991) **Deductions from wages**

1. An employer shall not withhold or divert any portion of an employee's wages unless:

a. The employer is required or permitted to do so by state or federal law or by order of a court of competent jurisdiction; or

b. The employer has written authorization from the employee to so deduct for any lawful purpose accruing to the benefit of the employee.

2. The following shall not be deducted from an employee's wages:

c. Losses due to breakage, damage to property, default of customer credit, or nonpayment for goods or services rendered so long

## 337.060 (1993); Ky. Rev. Stat. Ann. sec. 337.010(c) (1993).[13]

as such losses are not attributable to the employee's willful or intentional disregard of the employer's interest.

d. Lost or stolen property, unless the property is equipment specifically assigned to, and receipt acknowledged in writing by, the employee from whom the deduction is made.

### Iowa Code sec. 91A.2 (1991) **Definitions**

7. "Wages" means compensation owed by an employer for:

a. Labor or services rendered by an employee, whether determined on a time, task, piece, *commission,* or other basis. (Emphasis added.)

[13] Ky. Rev. Stat. Ann. sec. 337.060 (1993) **Unlawful for employer to withhold wages—Exceptions—Specified deduction from wages prohibited**

(1) No employer shall withhold from any employee any part of the wage agreed upon. This section shall not make it unlawful for an employer to withhold or divert any portion of an employee's wage when the employer is authorized to do so by local, state or federal law or when a deduction is expressly authorized in writing by the employee . . ..

(2) Notwithstanding the provisions of subsection (1) of this section, no employer shall deduct the following from the wages of employees:

(e) Losses due to defective or faulty workmanship, lost or stolen property, damage to property, default of customer credit or nonpayment for goods or services received by the customer if such losses are not attributable to employee's wilful or intentional disregard of employer's interests.

### Ky. Rev. Stat. Ann. sec. 337.010 (1993) **Definitions**

(c) "Wages" include any compensation due to an employee by reason of his employment, such compensation to include salaries, *commissions,* vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy . . . (emphasis added).

757

The Minnesota statute is most similar to Wisconsin's sec. 103.455. It prohibits an employer from making deductions for loss, theft or damage from an employe's wages (undefined) unless the employe has given written authorization for the deduction or a court has determined that the employe is liable. Minn. Stats. sec. 181.79 (1993).[14] The Minnesota courts apparently have interpreted the statute as applicable to commissions which are due and earned.[15]

We conclude that the legislature intended the word "wages" in sec. 103.455 to encompass the ordinary understanding of the word in everyday parlance and in the law, namely that "wages" encompasses a variety of forms of employe remuneration. This interpretation of "wages" includes commissions and is consistent with the section's purpose to protect employes from having arbitrary deductions made from their earnings. An employe in a managerial position whose compensation is partially based on performance

---

[14] Minn. Stat. sec. 181.79 (1993) **Wage deductions for faulty workmanship, loss, theft or damage**

> Subdivision 1. No employer shall make any deduction, directly or indirectly, from the wages due or earned by any employee, who is not an independent contractor, for lost or stolen property, damage to property, or to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction or unless the employee is held liable in a court of competent jurisdiction for the loss or indebtedness. . . .
>
> Any agreement entered into between an employer and an employee contrary to this section shall be void. . . .

[15] *See, e.g., Oja v. Dayton Hudson Corp.,* 458 N.W.2d 169 (Minn. App. 1990); *Meyer v. Mason Publishing Co.,* 372 N.W.2d 403 (Minn. App. 1985).

does not necessarily have a greater ability to contest deductions made from earnings than does an employe who is paid by the hour. For the reasons set forth, we conclude that "wages" in sec. 103.455 includes the plaintiff's commissions.

## III.

We now turn to the question of whether the plaintiff's actions are barred by a two-year statute of limitations.

The defendants argue that the plaintiff's actions are time barred by one of two different two-year statutes of limitations. First, the defendants argue that sec. 893.44, Stats. 1991–92,[16] the two-year statute of limitations for actions to recover "unpaid salary, wages or other compensation for personal services" is applicable to the plaintiff's actions. In the alternative, the defendants argue that sec. 893.93(2)(a), Stats. 1991–92,[17] the two-year statute of limitations for actions "by a private party upon a statute penalty" bars the plaintiff's actions.

The plaintiff argues that his actions are subject to a six-year statute of limitations, either under sec.

---

[16] Section 893.44. **Compensation for personal service.**

**(1)** Any action to recover unpaid salary, wages or other compensation for personal services except actions to recover fees for professional services . . . shall be commenced within 2 years after the cause of action accrues or be barred.

[17] Section 893.93. **Miscellaneous actions.**

**(2)** The following actions shall be commenced within 2 years after the cause of action accrues or be barred:

(a) An action by a private party upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor and the state, except when the statue imposing it provides a different limitation.

893.43, Stats. 1991–92,[18] which applies to actions "upon any contract, obligation or liability," or alternatively under sec. 893.93(1)(a), Stats. 1991–92,[19] the six-year statute of limitations for an "action upon a liability created by statute when a different limitation is not prescribed by law."

In approaching the question of which statute of limitations applies to the plaintiff's actions, we keep in mind that the court interprets statutes of limitations so that "no person's cause of action will be barred unless clearly mandated by the legislature." *Saunders v. DEC International, Inc.,* 85 Wis. 2d 70, 74, 270 N.W.2d 176 (1978).

We begin by examining whether either of the two-year statutes of limitations applies to the plaintiff's actions.

The Wisconsin courts have had little opportunity to interpret sec. 893.93(2)(a), the two-year statute of limitations for an action by a private party upon a statutory penalty, except in anti-trust cases.[20] Section 893.93(2)(a) has been applied to claims brought pursu-

---

[18] Section 893.43. **Action on contract.**

An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

[19] Section 893.93. **Miscellaneous actions.**

(1) The following actions shall be commenced within 6 years after the cause of action accrues or be barred;
(a) An action upon a liability created by statute when a different limitation is not prescribed by law.

[20] *See, e.g., Open Pantry Food Marts v. Falcone,* 92 Wis. 2d 807, 286 N.W.2d 149 (Ct. App. 1979); *Segall v. Hurwitz,* 114 Wis. 2d 471, 339 N.W.2d 333 (Ct. App. 1983). *See also Grengs v.*

ant to the state anti-trust law. The anti-trust law has been characterized as a remedial provision intended to "preserve our free-enterprise system." *City of Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 373, 243 N.W.2d 422 (1976). The anti-trust law is also punitive in nature. It provides for treble damages which the court considers a statutory penalty. *Open Pantry Food Marts v. Falcone,* 92 Wis. 2d 807, 811, 286 N.W.2d 149 (Ct. App. 1979).

The defendants attempt to draw a parallel between sec. 103.455 and the state anti-trust law by characterizing sec. 103.455 as both remedial and punitive in nature. They argue that the double recovery provision of sec. 103.455 is punitive and that the section also imposes a statutory penalty.

We are not persuaded by the defendants' analogy between sec. 103.455 and the state anti-trust law, because the defendants do not acknowledge the different purposes of the two statutes. Anti-trust statutes are designed to benefit the public. As the Supreme Court has stated:

> Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. . . . This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation.

*Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262 (1972), quoted in *City of Madison,* 73 Wis. 2d at 373. Anti-trust laws provide for treble damages to encourage private enforcement in an area where government regulation alone would not be adequate.

*Twentieth Century Fox Film Corporation,* 232 F.2d 325 (7th Cir. 1956).

In contrast, sec. 103.455 is designed to benefit individuals. The court of appeals has explained that sec. 103.455 is a remedial statute because it provides a remedy for individual employes, rather than the public. *Erdman v. Jovoco*, 173 Wis. 2d at 281. "It is not uncommon for decisions to state the difference [between penal and remedial statutes] in terms of the nature of the evil sought to be remedied by the legislation, . . . it is penal if it undertakes to redress a wrong to the public and remedial if it undertakes to remedy a wrong to the individual." *In re: I.V.*, 109 Wis. 2d 407, 411, 326 N.W.2d 127 (Ct. App. 1982), quoting 3 J. Sutherland, *Statutes and Statutory Construction*, sec. 60.02 (C. Sands 4th ed. 1974). We agree with the court of appeals' characterization of sec. 103.455; the double recovery provision in the statute does not change its fundamental nature. Although the legislature has created an incentive for employers to comply with the statute by providing double damages, the statute is primarily intended to benefit individual employes.

There is not enough similarity between sec. 103.455 and the state anti-trust law to extend the applicability of the two-year statute of limitations to claims brought pursuant to sec. 103.455. The defendants have offered no other reasons for interpreting the double damages provision in sec. 103.455 as a statutory penalty. We therefore conclude that sec. 893.93(2)(a) is not applicable to the plaintiff's actions.

The two-year statute of limitations in sec. 893.44, relating to actions to recover unpaid wages for personal services, would on its face appear to be the appropriate statute of limitations in this case. The case law, however, points to sec. 893.43, the six-year statute of

limitations relating to actions on contract, obligation or liability.

In *Estate of Javornik,* 35 Wis. 2d 741, 749, 151 N.W.2d 721 (1967), the court interpreted the phrase "personal services" as used in the two-year statute of limitations[21] in a limited way, distinguishing between human labor sought for its own sake and labor sought for the purpose of obtaining its fruits. The two-year statute of limitations applies, wrote the court, only to causes where "human labor itself is sought and is the object of the compensation," not to actions where the defendant's interest was to secure an end product. *Estate of Javornik,* 35 Wis. 2d at 749. The court stated:

> '[P]ersonal services' . . . means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for 'other compensation' in the case of an independent contractor . . . Such human labor must be in the nature of a service as distinguished from the end product or fruit of the service . . . [T]he distinguishing feature of personal services for the purpose of this section is whether the human labor itself is sought and is the object of the compensation or whether the end product of the service is purchased.[22]

[21] In *Estate of Javornik* the court interpreted the previous version of this statute, sec. 893.21(5). The text of sec. 893.44 is identical to the text of the previous version.

[22] The narrow interpretation of the statute of limitations for personal services set forth in *Estate of Javornik* has been followed in other cases. *See Rupp v. O'Connor,* 81 Wis. 2d 436, 261 N.W.2d 815 (1978); *Lorenz v. Dreske,* 62 Wis. 2d 273, 214 N.W.2d 753 (1974); *Schroeder v. Gateway Transportation Co. Inc.,* 53 Wis. 2d 59, 191 N.W.2d 860 (1971); *Younger v. Rosenow Paper & Supply Co,* 51 Wis. 2d 619, 188 N.W.2d 507 (1971).

In *Saunders v. DEC International, Inc.,* 85 Wis. 2d 70, 270 N.W.2d 176 (1978), the court adopted the *Javornik* interpretation of personal services in sec. 893.44. The *Saunders* court held that the two-year statute of limitations for actions for compensation for personal services did not apply to an employe's action to recover an unpaid commission for the sale of equipment manufactured by his employer. The court reasoned that the commission due to the employe was payment for the fruit of his labor, not for the labor itself. *Saunders,* 85 Wis. 2d at 75. Thus the compensation was unrelated to effort expended; it depended solely on results.

Furthermore, the *Saunders* court declared that the two-year statute of limitations should be interpreted "in favor of litigants to limit the number of actions which are barred.' " *Saunders,* 85 Wis. 2d at 74 (quoting *Lorenz v. Dreske,* 62 Wis. 2d 273, 280–81, 214 N.W.2d 753 (1974). The *Saunders* court viewed the two-year statute of limitations as an exception to the normal six-year period within which contract actions must be brought. Therefore the court concluded that the exception (the two-year statute) should be interpreted narrowly so that it did not swallow the rule (the six-year statute). Accordingly the *Saunders* court held that the employe's action for commissions was controlled by the six-year statute of limitations for contract claims. *Id.* at 75.

While the *Saunders* case did not involve a sec. 103.455 action, its holding applies directly to the plaintiff's actions in the case at bar. The commission portion of the plaintiff's compensation was payment for the fruits of his labor; it was based on the percentage of gas and merchandise sold by the store regardless of whether the plaintiff was present when the sales were

made. Thus the commissions were based on the attainment of results. Because the plaintiff seeks to recover amounts deducted from his commission, his action is subject to sec. 893.43, the six-year statute of limitations for contracts.

Although we have concluded that commissions fall within wages for purposes of sec. 103.455, the *Saunders* case leads us to categorize payment in the form of commissions as a contract, obligation or liability under sec. 893.43, not wages or compensation for personal services under sec. 893.44. Classifying commissions as wages for purposes of sec. 103.455, but not for sec. 893.44, is justified by the different objectives of the statutes. Section 103.455, as a remedial statute, is construed broadly to effectuate the legislative purpose of protecting employes. In contrast, because sec. 893.44 is a statute of limitations, it is narrowly construed to protect claimants. Moreover, other cases have not applied sec. 893.44 to remuneration in the form of commissions.

Because we conclude that the six-year statute of limitations governing actions upon any contract, obligation or liability is applicable to this action, it is not necessary to analyze whether another six-year statute of limitations, sec. 893.93(1)(a) for "an action upon a liability created by a statute when a different limitation is not prescribed by law," is applicable to the plaintiff's actions.

For the reasons set forth, we conclude that the plaintiff's actions to recover deductions made from his commissions is subject to sec. 893.43, the six-year statute of limitations for causes of action on contract.

## IV.

The next issue we must address is whether the plaintiff was required to exhaust administrative remedies by bringing his claims before the Department of Industry, Labor and Human Relations (DILHR) prior to initiating these court actions against his employers. The defendants argue that initiating DILHR proceedings is required by the following language in sec. 103.455: "In case of disagreement between the 2 parties, the department [DILHR] shall be the 3rd determining party subject to any appeal to the court" Section 103.455. The defendants do not cite any authority to support their interpretation of sec. 103.455.

We believe the defendants are reading this sentence out of context and misinterpreting the language of sec. 103.455. In *Peters v. International Harvester Co,* 248 Wis. 451, 22 N.W.2d 518 (1946), the court held that the statute only requires an employe to bring a claim before DILHR when the employer and employe are in disagreement as to whether there are grounds for deductions from compensation. *Peters,* 248 Wis. at 455. The requirement that DILHR be the determining party does not apply if the employer has never given the employe an opportunity to contest the validity of the deductions in the first place. *Id.*

Because we find the interpretation of the statute enunciated in *Peters* reasonable, we conclude that the plaintiff was not required to exhaust administrative remedies prior to initiating his actions against his employers, Jovoco and Crown Coco.

## V.

Finally, the defendants assert that the plaintiff is not entitled to recover under sec. 103.455 because the defendants complied with the requirements of sec. 103.455. The defendants assert that the plaintiff authorized the deductions. The defendants provided the plaintiff with a manager's manual which stated, "if there is a cash or merchandise shortage at a station store, it might be deducted from the manager's commission or bonus. . . ." The plaintiff signed below a section which reads:

IF EMPLOYED, I HEREBY AGREE TO THE FOL-LOWING CONDITIONS OF EMPLOYMENT.

1. I have read the attached "Statement of Policy" and agree to be bound by it.

2. I agree to follow all credit card, check cashing, and account receivable procedures as described by my employers and agree to be responsible for any infractions of these procedures.

I HAVE READ THE ABOVE AND UNDERSTAND THE CONDITIONS OF EMPLOYMENT.

Crown Coco concedes that the foregoing does not satisfy the requirements of sec. 103.455. Such a blanket authorization at the time of hiring is not contemplated by the statute. The consent of the employe may only serve as a basis for a deduction where it is given in writing after the loss has occurred and before the deduction is made. *Donovan v. Schlesner,* 72 Wis. 2d 74, 81, 240 N.W.2d 135 (1976).

With respect to Crown Coco, the plaintiff also signed a declaration of release on the commission

767

checks issued to him, each of which contained the following statement: "The check is taken in full satisfaction for all hours I have worked for Crown Coco, Inc., including all price surveys, paperwork and banking. I hereby release Crown from any liability hereto."

Crown Coco asserts that by signing this statement the employe "authorizes the employer in writing to make such deduction," thus satisfying the statutory requirements of sec. 103.455. We do not read sec. 103.455 as Crown Coco does.

As we have discussed, sec. 103.455 intends that the employer give the employe an opportunity to protect his rights regarding deductions for defective or faulty workmanship, lost or stolen property, or damage to property. The statute is designed to prohibit arbitrary determinations by the employer. *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 600, 13 N.W.2d 53 (1944). If the employer is to make deductions, it may do so only in accord with one of the means provided by the statute: 1) The employe must authorize the deduction in writing; 2) there must be a mutual determination by the employer and a person representing the employe that the faulty work, loss or theft was caused by the employe's carelessness, negligence, wilful or intentional misconduct, or 3) the employe must be found guilty or liable for the loss by a court of competent jurisdiction. *Donovan v. Schlesner,* 72 Wis. 2d 74, 82, 240 N.W.2d 135 (1976). As the court stated in *Zarnott,* when an employer hired an employe sec. 103.455 "became part of the contract and the parties were bound by its terms." *Zarnott,* 244 Wis. at 602.

The key to determining compliance with sec. 103.455 is the employe's opportunity to assert a right to

amounts duly earned. The objective of the statute is violated either by an employer who requires an employe to be bound by deductions before any claimed loss or indebtedness arises or by an employer who requires an employe to agree to the deductions and release all claims as a condition for receiving compensation, without giving the employe an opportunity to challenge the deductions. Agreements between the employer and the employe which are contrary to the objective of the statute are void. *Donovan v. Schlesner,* 72 Wis. 2d 74, 81, 240 N.W.2d 135 (1976). Accordingly we conclude that the defendants have not complied with the requirements of sec. 103.455.

Because sec. 103.455 is applicable to the deductions made from the commission portion of the plaintiff's earnings, because the actions are neither barred by a two-year statute of limitations nor required to be initiated before DILHR, and because the defendants have not complied with the procedures prescribed by sec. 103.455, we conclude that the plaintiff is entitled to pursue his actions pursuant to sec. 103.455. We reverse the decision of the court of appeals and the judgments of the circuit court and remand this case for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.